# THE STATE ex rel. GEORGE S. GRAHAM et al. v. THOMAS J. SEEHORN, Judge.

### In Banc, December 10, 1912.

1. **PROHIBITION: Condemnation: Right of Appeal: Jurisdiction.** A holding in the condemnation proceeding that relators have the right of an appeal from the municipal court of Kansas City to the circuit court would not tend to show a want of jurisdiction or excess of jurisdiction in the circuit judge to hear the proceeding on appeal, and therefore would afford no ground for relief by prohibition against such circuit judge who is about to try said cause *de novo* after such appeal from the municipal court.

2. **MUNICIPAL COURT: Condemnation Proceedings: Constitutional Court.** Under the Constitution, Kansas City had authority in 1908 to frame and adopt a charter providing for a municipal court vested with power to hear and determine proceedings for the condemnation of lands for public streets and assessing the damages and benefits, such proceedings being matters of local municipal concern. Sec. 22, Art. 6 of the Constitution, conferring on circuit courts exclusive original jurisdiction in all civil cases "not otherwise provided for," did not inhibit the vesting of such power in the municipal court, since the Enabling Act of 1887 specifically gave to said city "exclusive control over its public highways, streets," etc.

   *Held,* by VALLIANT, C. J., with whom FERRISS, J., concurs, that the power of Kansas City by its charter to vest original jurisdiction in its municipal court in condemnation cases having been acquiesced in for more than twenty years prior to the adoption of the present charter and property rights to a great extent having been acquired under that assumption, the existence of such power, under the Constitution, should now be conceded.

   *Held,* by GRAVES, J., dissenting, with whom WOODSON, J., concurs, that the right of eminent domain is a sovereign right, and can·be exercised only by the State or by permission or grant of authority from the State, and the State

has not granted to Kansas City authority to create its own court for the exercise of that right, but has vested the circuit courts with exclusive jurisdiction in such matters; and the attempt to create a municipal court vested with powers of condemnation being unconstitutional, the Constitution should be upheld, notwithstanding imaginary disastrous results that may follow the enforcement of its commandments.

3. **PROHIBITION: Jurisdiction: Condemnation: Appeal from Municipal Court.** So long as a court is proceeding within the sphere of its judicial authority it is not amenable to the writ of prohibition. Where the facts alleged in the return and admitted by the demurrer thereto show that respondent circuit judge had obtained jurisdiction over the persons of relators, and it is determined that the municipal court was vested with original jurisdiction of the condemnation proceeding in controversy, and that the circuit court was possessed of the cause by a proper appeal therefrom, it will be held that said circuit court was clothed with power to determine the validity of the ordinance on which the condemnation rests, and to determine whether the parties in interest were properly before the court in the manner prescribed by the charter; and the Supreme Court will not, by its writ of prohibition, on the theory that the ordinance and the judgments and proceedings in the municipal court were invalid for. noncompliance with the charter, prohibit the circuit court from trying the case *de novo* and determining such alleged invalidity.

## Prohibition.

WRIT DENIED.

*Douglass & Watson, Edward J. White,* and *Ball & Ryland* for relators.

(1) If the municipal court had no jurisdiction either of the original proceedings under ordinance 3209 or of the supplemental proceedings (so-called) under ordinance 7539, then the circuit court on appeal would have no jurisdiction. (2) The charter of Kansas City could not confer original civil jurisdiction on the municipal court and so much of Secs. 1 and 2, Art. 6 and Sec. 10, Art. 4, of the Charter of 1908 as purports to do so, is violative of Secs. 1, 22, 34, 36 and 37, Art. 6 of the Constitution and Sec. 15

of the Schedule of the Constitution, conferring civil
jurisdiction exclusively on circuit courts except as
otherwise provided and of Sec. 16, Art. 9 of said Con-
stitution, authorizing Kansas City to frame and adopt
a charter, and is inconsistent with the Constitution
and laws of the State. R. S. 1909, Secs. 8579, 8663,
6050; State v. Fry, 4 Mo. 190; Abbott on Mun. Corp.,
Sec. 584; Spencer v. Sulley Co., 4 Dak. 474; Indus-
trial School v. County, 40 Wis. 326; Dillon on Mun.
Corp. (5 Ed.), Secs. 744, 745, 632; In re Cloherty, 27
Pac. 1064; People v. Howell, 5 Colo. 412; Lafon v.
Dufracq, 9 La. Ann. 350; Ottawa v. Carey, 108 U. S.
121. (3) The municipal court was wholly without au-
thority under the terms of the charter to "hear and
determine the cause" or to impanel a jury therein by
reason of the failure to publish the court order of
notice of the proceedings—a publication "necessary
to the validity thereof." Charter 1908, Sec. 2, p.
255; Shaffner v. St. Louis, 31 Mo. 264; State ex rel.
v. Gill, 84 Mo. 248; Kansas City v. Mulkey, 76 Mo.
247; St. Louis v. Brenckwirth, 204 Mo. 305. (4) Sec.
23, Art. 6, of the charter, concerning supplemental
proceedings to cure "any error, defect or omission"
in the original proceedings, has no application to the
case at bar. Here there was nothing to supplement.
(5) The final decree in the injunction case of Union
Pacific Railroad Co. et al. v. Flynn et al., wherein it
was adjudged that the municipal court had no juris-
diction of the persons or properties of the relators
and that the assessments were null and void, was and
is *res adjudicata* and precludes the city from attempt-
ing to validate them by a supplemental proceeding.
McDaniel v. Carroll, 19 Ill. 226; Nelson v. Roundtree,
23 Wis. 367. (6) Original ordinance 3209 is void
on its face in that it requires that "the amount allowed
for private property taken shall be wholly raised by
special assessments made against the property de-
scribed" in the benefit district, contrary to the pro-

visions of the charter (Sec. 3, Art. 6), which expressly directs that there shall first be assessed against the city "the amount of benefit to the city and public generally, inclusive of any benefit to any property of the city," and the balance, if any, against the several tracts of private property in benefit district. No citizen was bound to pay any attention to an ordinance *in invitum,* containing such a provision as did the one in question. (7) Ordinance 7539, purporting to supplement the proceedings under 3209 is void on its face, and does not comply with Sec. 23, Art. 6 of the charter governing supplemental proceedings: (a) Because said section 23 was not intended to apply to a case where the original proceedings as here, were, and were finally adjudged to be, wholly void for lack of jurisdiction. (b) Because this ordinance is vague, indefinite and uncertain in its terms and does not comply with said section 23, which requires the proceeding to be "to properly assess against any piece or parcel of private property against which an assessment was in the first proceeding erroneously made or omitted to be made, the proper amount," etc., and further that "such supplemental proceedings shall be instituted and conducted as to the particular piece or pieces of private property sought to be acquired or assessed," etc.

*A. F. Evans, John G. Park, Hunt C. Moore, John G. Schaich, Jay M. Lee* and *A. F. Smith* for respondent.

(1) The municipal courts of Kansas City have jurisdiction in a proceeding for the condemnation of land for street purposes. That jurisdiction was conferred by the Legislature when Kansas City was given its early charters by special acts. Secs. 6, 8, 12, Art. 5, Constitution 1820; Sec. 1, Art. 5, Constitution 1820, as amended in 1822; Laws 1851, p. 88; Laws 1852, p.

244; Secs. 1, 13, 21, 23, Art. 6, Constitution 1865; Laws 1867, p. 18; Laws 1870, p. 327; Laws 1872, p. 397; Laws 1875, p. 196; Secs. 1, 22, Art. 6, Constitution 1875. That jurisdiction was continued in the freeholders' charters adopted under Sec. 16, Art. 9 of the Constitution of 1875. Sec. 1, Art. 7, Charter of 1889; Sec. 1, Art. 6, Charter of 1908. The changing of the title of the court from "Mayor's Court" to "Municipal Court" did not change the jurisdiction or authority of the court. Worthington v. London Co., 164 N. Y. 81. The clause in Sec. 22, Art. 6 of the Constitution making the circuit court have exclusive jurisdiction over all civil cases "not otherwise provided for" does not mean "otherwise provided for in the Constitution." Jurisdiction conferred by a charter provision would be a jurisdiction "otherwise provided for" within the meaning of said section 22. State ex inf. v. Lund, 167 Mo. 241. The clause in Sec. 22, Art. 6 of the Constitution, permitting the conference of such jurisdiction upon inferior tribunals "as is or may be provided by law" does not mean that that law must be enacted by the General Assembly. A charter provision is a "law." Barber Co. v. French, 158 Mo. 547; Corrigan v. Kansas City, 211 Mo. 627; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Oil Co., 140 Mo. 458; Kansas City v. Bacon, 147 Mo. 270; Meier v. St. Louis, 180 Mo. 409; Morrow v. Kansas City, 186 Mo. 684; Brunn v. Kansas City, 216 Mo. 108. (2) Defects in the original condemnation proceeding were cured by a supplemental proceeding, authorized by the charter. Sec. 23, Art. 6, Charter 1908. A judgment in condemnation proceeding is an entirety. St. Louis v. Nelson, 169 Mo. 461. (3) There has been no conclusive adjudication barring a hearing of the proceeding in question. (4) Ordinance 3209 was not void. (5) Ordinance 7539 was not void. (6) The ascertainment of damages for property taken and the

assessment of benefits conferred, when united in one proceeding, are not separable issues permitting separate judgments. An appeal is allowable from supplemental proceedings instituted under Sec. 23 of Art. 6 of the charter. Kirksville v. Munyon, 114 Mo. App. 567; Morewood v. Hollister, 6 N. Y. 309; O'Dea v. Washington, 3 Neb. 118; Irwin v. Bank, 6 Oh. St. 81; Hare v. Rice, 142 Pa. St. 608. (7) The fact that the ordinance in the supplemental proceeding provided for the correction of benefits only, without referring to a reascertainment of damages, would not prevent a reascertainment of damages on appeal to the circuit court, because on appeal the cause must be tried *de novo*.

KENNISH, J.—This is an original proceeding by prohibition. The relators are owners of real estate in a proposed benefit district in a certain condemnation proceeding in Kansas City. Respondent is judge of Division No. 3 of the circuit court of Jackson county, in which division the said condemnation proceeding is now pending. The purpose of this suit is that respondent, as judge of said court, may be prohibited by the writ of this court from further holding cognizance of said condemnation proceeding. A preliminary rule in prohibition was granted upon the filing of the petition. In due time respondent filed his return thereto, and relators filed a demurrer to the return. Upon the issues of law thus presented the case stands before us for decision.

There is a companion case to the case in hand, entitled State ex rel. Tuller et al. v. Seehorn, now under submission in this court, *post*, p. 568. It was brought at the same time, arises out of the same litigation *nisi* and is against the same respondent, but the relators therein are the owners of the property sought to be taken for public use in said condemnation proceedings, and they ask this court to issue its writ of

prohibition against the respondent upon grounds different from and antagonistic to those relied upon by relators in this case.

The facts admitted by the pleadings herein, and as gathered from the petition and return, are substantially as follows:

In June, 1909, ordinance 3209 was enacted by the common council of Kansas City, for the purpose of widening and improving Sixth street between Broadway and Bluff streets, and to that end providing for the condemnation of the necessary adjacent property; also creating a benefit district and fixing the limits thereof, in which, for benefits received, the property should be subject to the payment of special tax assessments to meet the costs of the proposed improvement. The municipal court, after a plat of the property to be taken had been delivered to the clerk thereof, made an order, directed to "all persons whom it may concern," appointing a day and place for impaneling a jury to ascertain the compensation for the property to be taken and to make assessments to pay the same, as required by Sec. 2 of Art. 6 of the charter of said city. A copy of the order was published in the proper newspaper, and the parties owning real estate proposed to be taken were duly served with a copy of said order. In accordance with the order and notice a jury was impaneled, and after hearing the evidence and viewing the property, it returned a verdict fixing and allowing the compensation for the property to be taken, assessing against the city the amount of the benefits to the city and to the public, and assessing against the several lots and parcels of property within the benefit district the balance of said compensation, as a special tax and assessment, according to the benefits received. The verdict was confirmed by the common council, judgment rendered thereon by the municipal court, and, no appeal having been taken therefrom, the verdict was sent to the office of the city

treasurer for the collection of such special assessments, and more than one-half of the total amount so assessed was paid.

Some of the owners of property in the benefit district refused to pay their assessments and brought an injunction suit against the city to restrain and enjoin the collection of said assessments, upon the ground that the notice of the order for the impaneling of the jury by the municipal court had not been published as required by the provisions of the charter, and upon the further ground that the municipal court was without jurisdiction to proceed under ordinance 3209 and that the proceedings in said municipal court were null and void. Upon the assumption that the publication of said order was defective and the subsequent proceedings invalid, another ordinance, 6686, was introduced in the common council for the purpose of repealing ordinance 3209 and beginning the proceedings for the proposed improvement anew. Thereupon the owners of the property to be taken, and for which compensation had been allowed pursuant to ordinance 3209, and which was also proposed to be taken under ordinance 6686, brought an injunction suit against the city to restrain and enjoin the officers thereof from repealing said ordinance 3209, upon the ground that compensation had been awarded for the property so taken and that as the verdict and judgment therefor was unappealed from, the same had become a final judgment under which rights had become vested and which could not be set aside or annulled by enactment of the common council. Both injunction suits were heard before respondent at the same time and the issues were found in favor of the plaintiffs in each case. In the injunction suit brought by the property owners of the benefit district who had refused to pay their assessments (relators herein) the court in its decree, after finding that "said proceedings, verdict, confirmation thereof and judgment is, as to these

plaintiffs and each of them and as to their respective
properties, null and void," proceeded as follows: "It
is therefore considered, ordered, adjudged and de-
creed that said verdict, judgment and proceedings,
in so far as they affect or purport to affect plaintiffs
or any of them or any of their said several properties,
be and the same are hereby annulled and for naught
held; that the several assessments against the respect-
ive properties aforesaid of the plaintiffs and each of
them be and the same are hereby set aside and an-
nulled; that defendants Kansas City, M. A. Flynn, city
clerk, U. L. Weary, clerk of said municipal court, and
the officers and agents of said city, be and they are
each of them perpetually restrained and enjoined
from making out, certifying or attesting any taxbills
against the several properties of the plaintiffs or any
of them under and by virtue of said assessments, and
that plaintiffs have and recover of and from defend-
ant, Kansas City, the costs herein expended and have
execution therefor." No appeal was taken from the
judgment and decree in either of said injunction suits.

Sec. 23 of Art. 6 of the charter of Kansas City,
under which said condemnation proceedings were be-
ing prosecuted, is as follows:

> When by reason of any error, defect or omission in any pro-
> ceedings, or in the verdict or judgment therein that may be in-
> stituted under the provisions of this article, a portion of the
> private property sought to be taken, or some interest therein,
> cannot be acquired, or an assessment is made against private
> property which cannot be enforced or collected, or when, by rea-
> son of any such defect, private property in the benefit district is
> omitted, the city may, by ordinance, institute, carry on and main-
> tain supplemental proceedings to acquire the right and title to
> such property or interest therein intended to be taken by the
> first proceeding, but which cannot on account of such defect,
> error or omission, be acquired thereunder, or to properly assess
> against any piece or parcel of private property against which an
> assessment was in the first proceeding erroneously made or omit-
> ted to be made, the proper amount of such private property, ex-
> clusive of the improvements thereon, is benefited by the pro-
> posed improvement to be determined by the verdict of the jury

in such supplemental proceedings; and the original assessments may be revived, corrected, increased or diminished as may be necessary or equitable under the provisions of this article for the original proceedings. Such supplemental proceedings shall be instituted and conducted as to the particular piece or pieces of private property sought to be acquired or assessed in like manner and with like effect as in the original proceedings, and shall be known and described as supplemental proceedings for the purposes specified in the original ordinance; and a supplemental verdict and assessment shall be made, confirmed and copies of the original verdict certified in every particular as in the original proceedings; and the assessments as established and corrected by such supplemental verdict shall be collected by the city treasurer in the same manner and under like conditions and restrictions, powers and duties as in the case of original proceedings.

In the month of February, 1911, after the injunction against the city had been made perpetual, restraining the enforcement of the special assessments in the benefit district under ordinance 3209, the common council passed and the mayor approved ordinance 7539, which is as follows:

### AN ORDINANCE.

PROVIDING FOR, AUTHORIZING AND DIRECTING THE INSTITUTION, CARRYING ON AND MAINTAINING OF SUPPLEMENTAL PROCEEDINGS TO PROPERLY ASSESS BENEFITS AGAINST CERTAIN PIECES AND PARCELS OF LAND INCLUDED WITHIN THE BENEFIT DISTRICT PRESCRIBED BY ORDINANCE NO. 3209, APPROVED OCTOBER 19, 1909.

Whereas the Common Council of Kansas City, Missouri, passed an ordinance entitled "An ordinance to open and widen Sixth street from the east line of Bluff street to the west line of Broadway," approved July 14, 1909, which said ordinance was numbered 3209 and was duly approved October 19, 1909; and

Whereas proceedings were instituted under said ordinance in the municipal court of Kansas City to condemn the land in said ordinance described and a verdict was rendered in said municipal court; and

Whereas by reason of certain errors, defects and omissions certain assessments were made against land in the benefit district prescribed by said ordinance which cannot be enforced or collected and certain pieces of private property in the benefit district were omitted and not assessed by said verdict; and

Whereas in order to pay the total amount of damages awarded for land taken and damaged by said condemnation it

was and is necessary and required that said certain pieces and parcels of land shall be assessed if they are deemed benefited by the jury:

Now, therefore, be it ordained by the Common Council of Kansas City:

Sec. 1. That the mayor and city counselor are hereby authorized and directed to institute, carry on and maintain supplemental proceedings to properly assess against any piece or parcel of private property within the benefit district prescribed in ordinance No. 3209, approved October 19, 1909, against which an assessment was in the first proceeding wrongfully made or which was omitted to be made the proper amount such private property, exclusive of the improvements thereon, is benefited by the proposed improvement, such amount to be determined by the verdict of a jury in such supplemental proceedings as provided by article 6 of the charter of Kansas City.

Sec. 2. Nothing in this ordinance contained shall be held to limit the scope of such supplemental proceedings but such proceedings shall be deemed to be for all purposes authorized by article 6 of the charter of Kansas City.

Sec. 3. Such supplemental proceedings shall be begun in Division No. One of the municipal court of Kansas City and shall be known and designated as supplemental proceedings for the purposes specified in said ordinance numbered 3209.

Sec. 4. All ordinances or parts of ordinances in conflict with this ordinance are insofar as they conflict with this ordinance hereby repealed.

The preliminary steps having been properly taken under said ordinance 7539, an order was made by the municipal court and due notice published of the time and place fixed "for impaneling a jury to properly assess against any piece or parcel of private property within the benefit district above described, against which an assessment in the original proceedings was wrongfully made, or which assessment was omitted to be made, the proper amount such private property, exclusive of the improvements thereon, is benefited by the proposed improvement." On the 31st day of May, 1911, the jury impaneled under said ordinance 7539, as stated by relators, "returned into said municipal court their verdict purporting to assess the sum of $168,004.57 (being the amount of compensation found by the jury in the aforesaid proceedings under ordi-

nance. No. 3209 to be paid to the owners of property taken or damaged) against the city and the property in said benefit district, including the property of the relators; that there are over thirteen thousand lots and parcels of land within the benefit district prescribed by said ordinance No. 3209; that the jury verdict in said so-called supplemental proceedings was in all respects precisely the same as to the amount of benefits as the verdict returned in the original proceedings.''

The verdict thus returned was duly confirmed by ordinance and judgment rendered thereon by the municipal court, as in the former proceedings. An appeal was then taken to the circuit court of Jackson county, by the owners of the property in the benefit district whose property had been assessed with benefits in the supplemental proceedings and who had not paid the assessments theretofore made pursuant to the provisions of ordinance 3209. In the circuit court the cause was assigned to Division No. 3, over which division respondent presides. When the trial was about to be commenced in said division, respondent announced it as his opinion that the case should be tried *de novo,* ''as though it were a trial of proceedings under ordinance No. 3209, and that there should be ascertained before him, independent of previous proceedings, the amount of damages to be allowed for property taken or damaged, and the amount of assessments to be levied against property in the benefit district as benefits from the opening and widening of said street.'' Thereupon relators gave notice of an application to this court for a writ of prohibition, and further proceedings before respondent were suspended.

Upon the foregoing facts, relators contend:

''(a) That they have the right of appeal from the municipal court after the conclusion of the so-called supplemental proceedings.

"(b)  That the municipal court never had any jurisdiction of the original proceedings under 'ordinance No. 3209, or of the supplemental proceedings under ordinance No. 7539; that the municipal court never had any power or authority to hear and determine said cause in either proceeding, or to impanel a jury for that purpose, or to render any judgment at any time in said cause, and that all of the proceedings in said municipal court were null and void and without jurisdiction, and consequently the 'circuit court on appeal is without jurisdiction, and that said proceedings should be dismissed by the respondent."

It should be stated in explanation of relators' proposition (a), which seemingly has no place in a proceeding challenging the jurisdiction of respondent in the case sought to be prohibited, that relators in the companion case heretofore referred to, make the contention that no appeal is authorized by the charter of Kansas City from supplemental proceedings under said section 23 of article 6.  But whether that contention is well founded or not, it is obvious that the successful affirmance of the proposition that an appeal was authorized from the municipal court to the circuit court in the supplemental proceedings under ordinance 7539, would not tend to show want of jurisdiction or excess of jurisdiction in respondent to hear the condemnation proceedings on appeal, and therefore affords no ground for relief by prohibition.

Relators have set forth in their brief eight separate points or propositions which they learnedly argue in support of their right to the relief prayed for.  In the view we take of the case we think their contentions may be disposed of under two heads, as follows: First, "The charter of Kansas City could not confer original civil jurisdiction on the municipal court, and so much of Secs. 1 and 2 of Art. 6, and Sec. 10 of Art. 4, of the Charter of 1908, as purports to do so, is violative of Secs. 1, 22, 34, 36 and 37, Art. 6, of the

Constitution of Missouri, and Sec. 15 of the Schedule of the Constitution, conferring jurisdiction exclusively on circuit courts, except as otherwise provided, and of Sec. 16 of Art. 9 of said Constitution, authorizing Kansas City to frame and adopt a charter, and is inconsistent with the Constitution and laws of the State." Second, That the proceedings and judgments of the municipal court under ordinance 3209 and also under ordinance 7539 are void for noncompliance with the charter.

I. The first proposition demanding consideration is that of the jurisdiction of the municipal court in condemnation proceedings, as provided for by Art. 6 of the charter. If that court was without jurisdiction it follows that the circuit court acquired none on appeal, and relators in such case are entitled to relief.

Art. 6 of the charter of Kansas City purports to confer jurisdiction upon the municipal court, in proceedings to condemn private property "for straightening, opening, widening, extending or altering, for public use, any street, avenue, alley," etc., etc., and also jurisdiction in supplemental proceedings for the same purposes in case of an error or defect in original proceedings. The same article provides for an appeal in condemnation proceedings from the municipal court to the circuit court of Jackson county, where the cause shall be tried de novo. By Sec. 10 of Art. 4 of the charter the municipal court is created and its jurisdiction and powers prescribed. It is there provided that: "The municipal court and each division thereof shall have jurisdiction of all cases arising under any provision of this charter or any ordinance of the city and shall likewise exercise such jurisdiction as may be delegated to it by the general law of the State of Missouri." Sec. 1 of Art. 6 of the Constitution of this State is as follows: "The judicial power of the State, as to matters of law and equity, except as in this

Constitution otherwise provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, circuit courts, criminal courts, probate courts, county courts and municipal corporation courts." Sec. 16 of Art. 9 of the same instrument vests in cities of over one hundred thousand inhabitants power to adopt a charter for its own government "consistent with the Constitution and laws of this State." In the exercise of that power, the qualified voters of Kansas City, in the year 1908, adopted the present charter, which created the municipal court and clothed it with apparent jurisdiction in condemnation proceedings in the taking of property for public use and providing for the payment of compensation therefor.

Upon the foregoing provisions of the Constitution and the charter respondent rests his jurisdiction in the case pending before him. It cannot be doubted that the framers of the charter intended to confer upon the municipal court the jurisdiction challenged in this proceeding. The charter provisions upon that subject are clear and explicit. The sole question is as to the power of the people of Kansas City to lodge such judicial authority in a municipal court. Relators do not deny that municipal courts form a part of the judicial system of this State. The Constitution expressly makes them such, but the Constitution does not prescribe the bounds of their jurisdiction; neither does it prescribe the authority under which such courts shall be established and their jurisdiction fixed, and therein lies the root of the relators' contention. Doubtless if the inhabitants of Kansas City had not availed themselves of the right to adopt a charter, the General Assembly of the State, as the repository of general legislative power, would have had full constitutional warrant to provide a charter for the city, to create a municipal court and to define its jurisdiction, even over such subjects as the relators dispute in the present proceeding. Indeed, that was the rec-

ognized source of the authority of this municipality in such matters prior to the adoption of the Constitution of 1875 and long thereafter.

Respondent maintains that the condemnation of property for public streets is purely a matter of municipal concern, and that as the Constitution, by Sec. 16 of Art. 9, conferred upon the qualified voters of the city full power and control over such matters, by the adoption of a charter and making provisions therefor, the voters may thus speak with authority equal to that of the General Assembly in the absence of such charter. It will be observed that the power thus vested in the voters of the city is not conditioned upon any action to be taken by the General Assembly, but is absolute and direct from the source of all governmental power, subject only to the condition that such charter shall be consistent with the Constitution and laws of the State.

That the jurisdiction thus conferred upon the municipal court is not inconsistent with the Constitution and laws of this State, is further affirmed upon the fact that the Enabling Act, enacted by the General Assembly in the year 1887 and made applicable to Kansas City, provided that the charter adopted by the city should "constitute the entire organic law of the city and should supersede all laws then in force not otherwise governing or appertaining to cities having one hundred thousand inhabitants or more," and that by a further provision of said act the city is expressly given "exclusive control over its public highways, streets," etc.

On the other hand, it is urged by relators that as the Constitution does not define the jurisdiction of "municipal corporation courts," and that as Sec. 22 of Art. 6 thereof confers upon circuit courts "exclusive original jurisdiction in all civil cases not otherwise provided for," the circuit court alone has jurisdiction over such civil proceedings as the condemna-

tion of real estate for public use. We are not favorably impressed with this argument. Under repeated decisions of this court it is settled beyond question that the condemnation of property in municipalities, for use as public streets, is a matter pertaining to local municipal government as contradistinguished from such as belong to the domain of general State control; and further, that the procedure prescribed by the charter in such condemnation cases, "not inimical to the general scope of the policy of our Constitution and laws," will prevail as against provisions of the general law upon the same subject. The language last quoted was used by LAMM, J., in the case of Brunn v. Kansas City, 216 Mo. l. c. 117, and discussing the procedure prescribed by the charter in the exercise of the right of eminent domain, it is further said: "Such special provisions may be likened to exceptions read into or grafted on the general law." These propositions are fully supported by the following authorities: Brunn v. Kansas City, 216 Mo. 108; State ex rel. v. Telephone Co., 189 Mo. 83; Kansas City v. Bacon, 147 Mo. 259; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Oil Co., 140 Mo. 458; Kansas City v. Ward, 134 Mo. 172; Kansas City ex rel. v. Scarritt, 127 Mo. 642. From the foregoing it follows that as the proceedings sought to be prohibited involved a subject of purely local concern, it was within the power of the city to confer jurisdiction thereof upon the municipal court, as provided in its charter. That jurisdiction rests upon the same well-recognized basis as the jurisdiction of municipal or police courts in prosecutions for violations of city ordinances, enacted for the good order and health of the people. Proceedings under ordinances of the class last mentioned have always been held by this court to be civil cases, and therefore any argument based upon the exclusive jurisdiction of the circuit court in civil cases is equally as valid against the exercise of jurisdiction by· a municipal

court for the violation of any city ordinance, as in
case of a proceeding to condemn real estate for a pub-
lic street.

By the adoption of the charter creating the mu-
nicipal court and conferring jurisdiction thereon in
condemnation proceedings, and by authority of the
Enabling Act, if such were necessary, we are of the
opinion that the circuit court was deprived of exclu-
sive original jurisdiction in such civil cases, for the
reason that jurisdiction was otherwise provided for
within the meaning of said Sec. 22 of Art. 6 of the
Constitution.

II.   The question remains as to the invalidity of
ordinances 3209 and 7539 and the judgments and pro-
ceedings of the municipal court thereunder, for non-
compliance with the provisions of the charter.

We have held that the municipal court had juris-
diction of condemnation proceedings, and also that
respondent, as judge of the circuit court, had juris-
diction on appeal from the municipal court.   That
jurisdiction over the persons of the relators was ob-
tained in the cause sought to be prohibited is shown
by the facts alleged in the return and admitted by the
demurrer.   These propositions being conceded, it fol-
lows that the circuit court, being possessed of the
cause on appeal from the municipal court, was clothed
with judicial power to determine the validity of the
ordinance or ordinances upon which the condemnation
proceedings rested; to determine the question whether
the parties in interest were legally before the court
in the manner prescribed by the charter, as well as any
other question arising in the course of the trial.   Such
questions did not strike at the jurisdiction of the
court, but at the regularity and validity of the pro-
ceedings up to that stage, and when the respondent de-
cided or was about to decide adversely to the conten-
tion of the relators, he was acting neither without ju-

risdiction nor in excess of jurisdiction, but deciding such issues as arose in a cause rightfully before him and which that court alone was clothed with authority to decide.  It is well-settled law that so long as a court is proceeding within the sphere of its judicial authority, it is not amenable to the writ of prohibition.  [Delaney v. Police Court, 167 Mo. 667, and authorities cited: State ex rel. v. Tracy, 237 Mo. 109, and authorities cited; State ex rel. v. Shannon, 130 Mo. App. 90.]

In the Delaney case, supra (l. c. 679), this court said: "The jurisdiction of the police court to try cases for violation of municipal police regulations, leveled at disorderly conduct and drunkenness on the streets, is exclusive.  Its procedure in the exercise of its jurisdiction may or may not be erroneous, but so long as it has jurisdiction, and acts within its jurisdiction, its rulings and proceedings cannot be reviewed or corrected by means of a writ of prohibition, no matter how erroneous such rulings and proceedings may be.  Mere error or irregularity or mistake, be it ever so manifest, which does not amount to an excess of jurisdiction, will not be ground for a prohibition. [Lloyd on Prohibition, p. 48; Shortt on Mand. and Prohib., marg. p. 436; 19 Am. & Eng. Ency. Law (1 Ed.), p. 263.]  A writ of prohibition 'cannot be made to perform the functions of an appeal, a writ of error or a *certiorari,* its purpose being, not to correct errors, but to prevent a usurpation of jurisdiction.' "

And in the Tracy case, supra, l. c. 125, this court said: "There is no fact alleged tending to show the exercise or threatened exercise of jurisdiction in excess of his judicial power and authority, or that he has assumed or is about to assume any power other than that conferred upon him by the charter of the city and required of him by his oath of office.  While so acting in the line of his duty and within the scope of his judicial power as prescribed by the charter, it

cannot be maintained, in the light of the authorities heretofore cited, that he should be restrained and prohibited by the extraordinary writ of prohibition which issues only to prevent the usurpation of judicial power."

Under the law governing the issuance of writs of prohibition, we are of opinion that the respondent, in the matters complained of, was not guilty of usurpation of judicial authority, and that therefore the preliminary rule should be quashed and the writ denied.

It is so ordered. *Lamm* and *Brown, JJ.,* concur; *Valliant, C. J.,* and *Ferriss, J.,* concur in separate opinion by *Valliant, C. J.; Graves* and *Woodson, JJ.,* dissent in opinion filed by *Graves, J.*

## CONCURRING OPINION.

VALLIANT, C. J.—If the question of jurisdiction in the municipal court of cases of this kind were one of first impression I would concur in the dissenting opinion filed by my brother GRAVES. But on looking back over the cases that have been decided by this court I have come to the conclusion that whilst the question has not been directly decided by this court, yet cases have been here in which the question might have been raised but was not, and the subject was passed over in silence, the jurisdiction apparently acquiesced in by the parties and not questioned by the court. In its first charter adopted in 1889 by Kansas City under Sec. 16 of Art. 9, there was created a mayor's court upon which was conferred jurisdiction in cases of this kind and which the Charter of 1909 now confers on the municipal court. Thus for more than twenty years the city has acted on the assumption that it had authority to create such a court and confer on it such jurisdiction. In that period doubtless property rights have been acquired to a great

extent and I believe it would now be unwise to de-
clare that rights which have arisen out of the exercise
of such jurisdiction by such courts cannot be upheld.
For this reason I concur in the opinion of brother
KENNISH in this case.

*Ferriss, J.,* concurs in these views.

### DISSENTING OPINION.

GRAVES, J.—I dissent from the majority opin-
ion in this case. I shall not take time to block out my
views in my own language, because they have been ele-
gantly expressed by our Chief Justice, in a dissenting
opinion, which he prepared, and which at one time
was endorsed by a majority of this bench. Owing to
imagined disastrous results, some of my brothers have
concurred in a modified way in the present majority
opinion. For myself, I prefer to stand upon the law
and the State Constitution, irrespective of results. It
is for the people to rewrite the Constitution and not
for the courts. For the court to rewrite it in this in-
stance only furnishes a precedent to further discard
the organic law.

As expressive of my views of this case, I therefore
adopt the dissenting opinion prepared by our Chief
Justice VALLIANT, as follows:

"I cannot concur in the judgment denying the
writ of prohibition because in my opinion the munici-
pal court of Kansas City had no jurisdiction of this
cause or of suits of this kind, although the city char-
ter essays to confer such jurisdiction.

"Sec. 16, Art. 9, of our State Constitution says:
'Any city having a population of more than one hun-
dred thousand inhabitants may frame a charter for its
own government, consistent with and subject to the
Constitution and laws of this State.'

"That clause of the Constitution was designed to
give the city power to make a charter for itself which

246 Mo.—36

would be beyond the power of the General Assembly to repeal or amend. But the charter so authorized is restricted by the term of the grant to be for the city's 'own government,' and it must be 'consistent with and subject to the Constitution and laws of this State.' It is for city government, not State government, that the Constitution confers this power on the city. The words 'consistent with and subject to the Constitution and laws of this State' show an express purpose to withhold from the city the power to include in its charter governmental subjects that belong to the State as distinguished from subjects of mere municipal government. A charter adopted by the city in compliance with the terms of that clause of the Constitution can be amended only by a vote of the people in the city, not by the General Assembly. There have been numerous decisions by this court construing this clause of the Constitution as well as a somewhat similar clause relating to the city of St. Louis. I will not lengthen this opinion by reviewing those cases; they will be found in the annotations in the Revised Statutes 1909 at pages 113-115. What I have above said is, in my opinion, in conformity with those decisions.

"Kansas City under authority of Sec. 16, Art. 9, has adopted a charter, and in the charter it has created a court called the municipal court of Kansas City and has attempted to confer on that court, besides the jurisdiction that usually belongs to a city police court, jurisdiction in suits to collect taxes, suits for the enforcement of special taxbills, proceedings for taking and damaging private property, for ascertaining damages caused by change of grade or other exercise of the power of eminent domain.

"Those are subjects which in my opinion belong to the jurisdiction of the State courts, not to the city courts.

"The municipal court of Kansas City is merely a city court. The charter (Sec. 10, Art. 4) says: 'There is hereby created a court not of record to be known as the municipal court of Kansas City.' It is a court 'not of record.' It has no origin except the city charter. The charter provides that the judge shall be elected by the people of the city, but it could as well, without changing the character of the court, have provided that he be appointed by the mayor. It does provide that if a vacancy occurs in the office it is to be filled by election by the common council, and until the common council elects, the mayor may appoint to fill the vacancy. The charter also declares that the judge of the municipal court shall be *ex officio* a justice of the peace and exercise the jurisdiction and powers conferred by law on justices of the peace.

"The right of eminent domain is a sovereign right; it can be exercised only by the State or by permission or grant of authority from the State. The State has granted to Kansas City the power of eminent domain in the matter of opening, widening and grading its streets, the taking and damaging of private property for public use; but it has not granted to the city the right to create its own court for that purpose, and nowhere in the State except Kansas City is that right claimed. The right to exercise the power of eminent domain is one thing, it is a right essential to the city government, therefore properly covered in the charter adopted by the city under Sec. 16 of Art. 9, 'for its own government,' but the court in which that right is to be enforced or litigated is quite another thing; the grant of the right does not carry with it the power to create the court, nor is such power to be implied *ex necessitate* because the State has already established its courts to try such cases. Sec. 22 of Art. 6 of the Constitution confers on the circuit court 'exclusive original jurisdiction in all civil cases not

otherwise provided for.' That is a law not local in its character, but applicable to the whole State, and the term 'not otherwise provided for' means not otherwise provided for by a State law; until a State law otherwise provides, the charter must be 'consistent with and subject' to that law. In every county in the State, Jackson county not excepted, there was at the time this charter was adopted, and still is, a circuit court having jurisdiction to try causes involving rights claimed by the city under the power of eminent domain, as also suits to collect taxes, and suits on special taxbills, and therefore when the city undertook by its charter to confer jurisdiction in such matters on its municipal court it did not conform 'to the constitutional laws of this State,' but it undertook in effect to repeal the State law as to the exclusiveness of the jurisdiction of the State court.

"It is true, the charter says, that the municipal court shall exercise jurisdiction in such cases concurrent with the circuit court, but that does not alter the case. The question is not whether the charter could confer on the municipal court exclusive jurisdiction, but whether it could confer such jurisdiction at all. The jurisdiction attempted to be conferred is full and complete, though not exclusive. If the court is given jurisdiction to try such cases, its jurisdiction in any such case that is brought before it would not be impaired by the suggestion that the suit might have been brought in another court which has concurrent jurisdiction. In the very section of the charter, Sec. 10 of Art. 4, which attempts to confer jurisdiction in such cases on the municipal court, the jurisdiction of the circuit court also is recognized. The charter seems to proceed on the idea that because it does not repeal the State law which gives the circuit court jurisdiction, but only creates a city court giving it concurrent jurisdiction, it is 'consistent with and subject to the Constitution and laws of this State.' The charter does

not in so many words attempt to repeal the State law which gives the circuit court jurisdiction, but it does attempt in effect to repeal so much of the State law as gives that court exclusive jurisdiction.

"The charter undertakes to make the judge of the municipal court *ex officio* a justice of the peace and to confer on him all the powers and jurisdiction of a justice of the peace.  The framers of the charter might just as well have said that the judge of the municipal court should be *ex officio* a circuit judge.  A justice of the peace is as much a State officer as a circuit judge; he is an officer created by the Constitution, and his election is a matter regulated by State law.

"I have before me a volume entitled 'Charter and Revised Ordinances of Kansas City 1909,' which purports to be 'printed and published by authority of Kansas City.'  It bears on its title page the names of a number of distinguished members of the bar of Kansas City who have prefaced the work with an 'Introductory Note,' very learned in its character, and it is so apt to the subject under discussion that I am tempted to quote from it.

" 'But it is not every power that may be essayed to be conferred on the city by such a charter that is of the same force and effect as if it were conferred by an act of the General Assembly, because the Constitution does not confer on the city the right, in framing its charter, to assume all the powers incident to its municipality, yet the Legislature may, if it should see fit, confer on the city powers not necessary or incident to the city government.  There are governmental powers the just exercise of which is essential to the happiness and well-being of the people of a particular city, yet which are not of a character essentially appertaining to the city government.  Such powers the State may reserve to be exercised by itself, or it may delegate them to the city, but until so delegated they are reserved.  Nor does the Constitu-

tion confer unlimited power on the city to regulate by its charter, all matters that are strictly local, for there are many matters local to the city, requiring governmental regulations, which are foreign to the scope of municipal government.'

"The point is made that under an act of the General Assembly called the Enabling Act, approved March 10, 1887 (Laws 1887, p. 42), the purpose of which act was to provide the means by which a city entitled to frame its own charter under Sec. 16 of Art. 9 could do so, it is declared that such a charter when so adopted 'shall be and constitute the entire organic law of such city, and shall supersede all laws of this State then in force in terms governing or appertaining to cities having one hundred thousand inhabitants or more.'

"At the time of the passage of that act there was existing a general statute providing a charter for all cities having a population of more than 100,000, and the purpose of the clause in the Enabling Act just quoted was to declare that the charter adopted by the city under the terms of that act was to take the place of the charter prescribed for cities of 100,000 inhabitants by the general statute. The clause in the Enabling Act does not say that the charter so adopted 'shall supersede all laws of this State then in force,' but the language is it 'shall supersede all laws of the State then in force in terms governing or appertaining to cities having one hundred thousand inhabitants or more.' It is only laws of the general statutes expressly designed for the government of cities of 100,000 inhabitants that the charter is to supersede.

"I refer again to the language of the 'Introductory Note' from which I have already quoted: 'There are governmental powers the just exercise of which is essential to the happiness and well-being of the people of a particular city, yet which are not of a character essentially appertaining to the city government. Such

power the State may reserve to be exercised by itself, or it may delegate them to the city, but until so delegated they are reserved.' And again, it is said: 'Nor does the Constitution confer unlimited power on the city to regulate, by its charter, all matters that are strictly local, for there are many matters local to the city, requiring governmental regulations which are foreign to the scope of municipal government.'

"The creating and furnishing courts to try important lawsuits is a right of the State; it is a conspicuous feature of State sovereignty; it does not naturally belong to a city. We have statutes conferring on police courts, mayor's courts, etc., of certain cities jurisdiction of the character attempted to be conferred by the Kansas City charter on its municipal court, but those statutes are acts of the State, not of the city. Such jurisdiction was conferred on the mayor's court of Kansas City under the charter granted by the General Assembly in 1888, but the mayor's court under the Charter of 1888 is not the municipal court we are now considering.

"A charter framed strictly within the authority of this clause of the Constitution cannot be repealed or amended by an act of the General Assembly, yet powers not naturally appertaining to a city government but appropriate thereto, may be conferred on the city by an act of the General Assembly, but such an act would not be an amendment of the city charter; it would be an act delegating State power which the city otherwise did not possess. Suppose, in framing the charter now under discussion, there had been no attempt to confer such jurisdiction on the city court and the Legislature had thereafter passed an act conferring such jurisdiction on such court. If the conferring of such jurisdiction was within the scope of the authority given the city under Sec. 16 of Art. 9, then the act of the General Assembly would be an intrusion into that authority, an amendment of the char-

ter adding something to the charter which the city might have added but chose not to add. But the General Assembly cannot amend a charter framed within that constitutional scope, therefore, the act would be void. If such an act could be deemed valid it could be so only on the ground that it was a power belonging to the State not within the scope of the constitutional authority conferred on the city.

"I am therefore of the opinion that the writ of prohibition should issue."

*Woodson, J.,* concurs with me in these views.