# KANSAS CITY v. ST. LOUIS & KANSAS CITY LAND COMPANY, CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY et al., Appellants.

## In Banc, July 14, 1914.

1. **CONDEMNATION: Supplemental Proceeding: Purpose of Charter Provision.** The object of the provision of the charter of Kansas City, authorizing the city by a supplemental ordinance to institute and carry forward a supplemental curative proceeding, was to afford a remedy when because of any error, defect or omission in the original ·condemnation proceeding assessments made against private property cannot be enforced or collected or where property in the benefit district has been omitted.

2. **SECOND HEARING: Correcting Errors at First: Stare Decisis.** The stiff general rule is that the lower court is bound by pronouncements made by the Supreme Court in a prohibition proceeding arresting the trial of a case, and so is the Supreme Court upon an appeal from a judgment rendered by the trial court in pursuance to such pronouncements. They become the law of the case, and certainty in the law and the necessity for ending litigation require that they be rigidly adhered to in all subsequent proceedings in the same case except where, upon a second hearing, it is apparent that palpable injustice has been done by them and no injury would result from a different decision, and even then the exception is to be applied with rare circumspection.

3. **MUNICIPAL COURT: Constitutional.** The municipal court created by the charter of Kansas City and empowered to condemn property for a public use and to assess damages and benefits, is a constitutional court. The Constitution authorizes the people of a city of the size of Kansas City to frame their own charter for the government of themselves in municipal matters; and charter provisions relating to the exercise of the power of eminent domain, prescribing benefit districts, assessing private property with benefits, allowing damages for property taken or damaged, and paying the damages out of the city treasury, are all matters of purely municipal concern.

4. ————: **Must be Clearly Unconstitutional: Far-Reaching Consequences.** The far-reaching effect of destroying the jurisdiction of the municipal court of Kansas City to open and widen

streets and assess benefits over a district calls loudly for the application to the charter provision creating it of the rule that a statute can be declared unconstitutional only when it can be shown beyond reasonable doubt to be in conflict with the fundamental law, and that the statute is to be upheld until every reasonable mode of reconciling it with the Constitution has been resorted to and reconciliation found impossible.

5. **CONDEMNATION: Necessary Parties: Lot Owners Assessed with Benefits.** · Low owners, whose properties within the benefit district and not taken are subject to assessment of benefits, are not necessary parties to that part of the proceeding relating to the ascertainment of damages to those whose properties are taken; nor is it to deny them due process of law to deny them a hearing on the issue of damages, although the law contemplates that a part of the damages allowed for property taken or damaged will be charged as a benefit to properties not taken within the district. [Following State ex rel. v. Seehorn, 246 Mo. 568.]

6. ———: **Damages and Benefits: Eminent Domain and Taxation.** It is the law of eminent domain that authorizes the taking of private property for a public use and the assessment of damages for that taken; it is the law · of taxation that authorizes the assessment of the damages for property taken or damaged as a benefit upon that not taken. The two powers are distinct in quality and are governed by different principles.

7. **CONDEMNATION: Property Owners Not Served: Injunction: Extent of Decree.** Where in the original proceeding in the municipal court to widen a street certain persons whose property was charged with benefits were defectively served and brought injunction to restrain the collection of the assessments and the decree, unappealed from, was that said assessments in so far as they affect plaintiffs or their properties are annulled, the whole proceeding was not annulled, but only so much of it as related to plaintiffs and their properties.

8. ———: ———: **Supplemental Proceeding.** And the charter provision relating to supplemental proceedings to cure defects, errors and omissions in the original proceedings, and to charge the properties of persons who were defectively served in the original proceedings with their share of the damages ascertained and adjudged therein, is applicable ·to plaintiffs who have by injunction obtained a decree enjoining the collection of the benefits assessed against their properties in that proceeding.

9. ———: ———: ———: **Omitted Property.** It is allowable to say that assessments of lots within the benefit district owned by persons who repudiated the proceeding in which they were made and had them annulled, were erroneously made or omitted to be made.

10. ———: All Damages to be Assessed as Benefits. Where the ordinance requires just compensation for private property taken in widening a street to "be assessed, collected and paid according to law," and that the amount of damages "allowed for private property taken shall be wholly raised by special assessments made against" private property in the benefit district "in accordance with article 6 of the charter," and the charter was followed and the city was assessed with its share of the damages "in accordance" therewith, it will not be held that the ordinance was void for that "it requires the amount allowed for private property taken to be wholly raised by special assessments against private property described in the benefit district," for that would be to give to the ordinance a harsh and strained construction, since it also requires the damages to be "assessed, collected and paid according to law" and "in accordance with" an unobjectionable article of the charter.

11. ———: Description of Property in District. Neither in the ordinance in the original proceeding, nor in the ordinance in the supplemental proceeding to bring in omitted property and charge it with its share of the damages, is it necessary to describe by metes and bounds or some other equally definite description, each particular tract of the 13,000 in the benefit district.

12. ———: ———: Order of Publication: Waiver of Defective Descriptions. An appearance and trial on the merits waives objections of form in the order of publication to the property owners whose property is to be assessed with benefits.

13. ———: Supplemental Proceedings: Lands in Litigation. Where certain lands were in litigation at the time of the original proceeding and no assessment of benefits was made against them, and the person to whom they were adjudged as the result of the litigation was defectively served in that proceeding, they may, in the supplemental proceeding, be assessed with their due proportion of the benefits as tracts "erroneously assessed" or "omitted to be assessed."

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Judge.

AFFIRMED.

*White & Lyons, Warner, Dean, McLeod & Langworthy, Sebree, Conrad & Wendorff, Ball & Ryland, Kenneth McC. DeWeese, Watson, Watson & Alford, Cowherd, Ingraham, Durham & Morse* and *Scarritt, Scarritt, Jones & Miller* for appellants.

(1)    The charter of Kansas City could not confer original civil jurisdiction on the municipal court, and so much of sections 1 and 2 of article 6 and section 10 of article 4 of the charter of 1908 as purports to do so, is violative of sections 1, 22, 34, 36 and 37, article 6, of the Constitution of Missouri, and section 15 of the Schedule of the Constitution, conferring civil jurisdiction exclusively on circuit courts except as otherwise provided and of section 16, article 9, of said Constitution, authorizing Kansas City to frame and adopt a charter, and is inconsistent with the Constitution and laws of the State. R. S. 1909, secs. 8578, 8663, 6050; State v. Fry, 4 Mo. 190; Abbott on Mun. Corp., sec. 584; Spencer v. Sulley Co., 4 Dak. 474; Industrial School v. County, 40 Wis. 326; Dillon on Mun. Corp. (5 Ed.), secs. 744, 745, 632; People v. Howell, 5 Colo. 412; La-fron v. Dufracq, 9 La. Ann. 350; Ottawa v. Carey, 108 U. S. 121.    See also dissenting opinion in State ex rel. v. Seehorn, 246 Mo. 541.    (2)    The judgment in the court below deprived appellants of their property without due process of law, in violation of the Fifth and Fourteenth amendments to the Constitution of the United States, in that no notice was ever given them of the pendency of said proceedings as required by sections 2, 3, 4, 6 and 7, of article 6, of the charter of Kansas City.    Davidson v. New Orleans, 96 U. S. 97; Hagar v. Reclamation District, 111 U. S. 701; Bellingham Bay & B. C. Co. v. New Whatcom, 172 U. S. 314; St. Louis v. Rankin, 96 Mo. 497; Lumber Co. v. Mc-Crimmon, 164 Fed. 759; Railroad v. Wright, 207 U. S. 137; Prichard v. Norton, 106 U. S. 124; Londener v. Denver, 210 U. S. 373; Railroad v. Backus, 154 U. S. 421; Irrigation District v. Bradley, 164 U. S. 112.    (3) The judgment of the trial court denied to these appellants the equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States, in denying them a hearing on the question of the value of the land taken or damaged under

proceedings under Ordinance 3209. (4) The court erred in holding that said proceeding under Ordinance 3209 could be supplemental after it had adjudged said proceedings null and void as to the Union Pacific Railroad Company et al., and the court erred in not sustaining appellant's contention that said judgment was *res adjudicata* as to all issues involved in said suit, and, that a void proceeding could not be supplemental after such proceedings were declared null and void. Daniel v. Carroll, 19 Ill. 226; Nelson v. Roundtree, 23 Wis. 367; Merritt v. Kewanee, 175 Ill. 552; Cooley on Const. Lim., p. 382. (5) The municipal court was wholly without authority under the terms of the charter to "hear and determine the cause" or to empanel a jury therein by reason of the failure to publish the court order of notice and of the proceedings—a publication "necessary to the validity thereof." Charter 1908, sec. 2 (p. 255); Shaffner v. St. Louis, 31 Mo. 264; State ex rel. v. Gill, 84 Mo. 248; Kansas City v. Mulkey, 76 Mo. 247; St. Louis v. Brinckwirth, 204 Mo. 305. (6) Section 23, article 6, of the charter, concerning supplemental proceedings to cure "any error, defect or omission" in the original proceedings, has no application to the case at bar. Here there was nothing to supplement. (7) Original Ordinance 3209 is void on its face in that it requires that "the amount allowed for private property taken shall be wholly raised by special assessments made against the property described" in the benefit district, contrary to the provisions of the charter (Sec. 3, art. 6), which expressly directs that there shall first be assessed against the city "the amount of benefit to the city and public generally, inclusive of any benefit to any property of the city," and the balance, if any, against the several tracts of private property in benefit district. No citizen was bound to pay any attention to an ordinance *in invitum*, containing such a provision as did the one in question.

*A. F. Evans, Jay M. Lee* and *J. C. Petherbridge* for respondent.

(1)   The legality of the municipal court of Kansas City has been established and its jurisdiction to try condemnation proceedings, including this supplemental proceeding, has been upheld by this court.   State ex rel. v. Seehorn, 246 Mo. 541, which is supported by the following cases and citations:   Baldwin v. Philadelphia, 99 Pa. St. 164; McCormick v. Fayette Co., 150 Pa. St. 190; Swift v. Tyson, 16 Peters (U. S.), 18; Fennell v. Common Council, 36 Mich. 185; Shattuck v. Kincaid, 49 Pac. 758; Industrial School v. Supervisors, 40 Wis. 328; In re Cloherty, 2 Wash. 137; People ex rel. v. Curley, 5 Colo. 412; Lafron v. Dufrocq, 9 La. Ann. 350; Ottawa v. Carey, 108 U. S. 110; Meagher v. Storey County, 5 Colo. 196; Hagerstown v. Dechart, 32 Md. 369; Edenton v. Wood, 65 N. C. 379; Ex parte Fagg, 44 S. W. 294; Blessing v. Galveston, 42 Tex. 641; Sec. 1, art. 6, Constitution; Sec. 10, art. 4, Charter of Kansas City; Sec. 16, art. 9, Constitution; R. S. 1899, sec. 6360; Sec. 22, art. 6, Constitution; State ex rel. v. Field, 99 Mo. 355; Kansas City ex rel. v. Scarritt, 127 Mo. 650; Kansas City v. Ward, 134 Mo. 186; Kansas City v. Oil Co., 140 Mo. 466; Kansas City v. Bacon, 147 Mo. 259; Brunn v. Kansas City, 216 Mo. 116; Kansas City v. Smart, 128 Mo. 289; Leonard v. Sparks, 117 Mo. 108; Ex parte Kilburg, 10 Mo. App. 446; 1 Dillon Mun. Corp. (5 Ed.), secs. 237, 238; Secs. 6, 8, 12, art. 5, Constitution 1820; Sec. 1, art. 5, Constitution of 1820, as amended in 1822; Laws 1851, p. 88; Laws 1852, p. 244; Secs. 1, 13, 21, 23, art. 6, Constitution 1865; Laws 1867, p. 18; Laws 1870, p. 327; Laws 1872, p. 397; Laws 1875, p. 196; Secs. 1, 22, art. 6, Constitution of 1875; Sec. 1, art. 7, of the Charter of 1889; Sec. 1, art. 6, of the Charter of 1908; Worthington v. London, etc., Co., 164 N. Y. 81; State ex inf. v. Lund, 167 Mo. 241; Barber Co. v.

French, 158 Mo. 547; Corrigan v. Kansas City, 211 Mo. 627; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Bacon, 147 Mo. 270; Meier v. St. Louis, 180 Mo. 409; Morrow v. Kansas City, 186 Mo. 684; Brunn v. Kansas City, 216 Mo. 108; 2 Dillon on Mun. Corp. (5 Ed.), pp. 1115, 1117; 1 Dillon on Mun. Corp. (5 Ed.), pp. 110, 111, 112. Dillon cites the following Missouri cases: Kansas City v. Oil Co., 140 Mo. 458; State ex rel. v. Tel. Co., 189 Mo. 83; Morrow v. Kansas City, 186 Mo. 675; Westport v. Kansas City, 103 Mo. 141; Kansas City v. Stegmiller, 151 Mo. 189; St. Louis v. Western Union Tel. Co., 149 U. S. 465. Note 3 Dillon (5 Ed.), p. 1621, citing: State v. Ramsey County Dist. Ct., 87 Minn. 146; State ex rel. v. Field, 99 Mo. 352; Kansas City v. Oil Co., 140 Mo. 458; Kansas City v. Bacon, 147 Mo. 259. (2) The appellants in the original proceedings were not necessary parties in so far as such proceedings related to the amount of the award as damages for property taken or damaged, and were not entitled to notice thereof. The city and the property-owners whose property was taken or damaged, were the only necessary parties to the original proceedings relating to the amount of the award allowed for property taken or damaged. State ex rel. v. Seehorn, Judge, 246 Mo. 583; Kansas City v. Smart, 128 Mo. 272; Kansas City v. Ward, 134 Mo. 179; St. Louis v. Brinckwirth, 204 Mo. 280; St. Louis v. Ranken, 96 Mo. 497; St. Louis v. Calhoun, 222 Mo. 44; St. Louis v. Buss, 159 Mo. 12; Pleadwell v. Glass Co., 151 Mo. App. 51; 1 Page & Jones on "Taxation by Assessment," 213; Goodrich v. Detroit, 184 U. S. 432; Voight v. Detroit, 184 U. S. 115; Adams v. Roanoke, 102 Va. 53; Londoner v. Denver, 210 U. S. 373; Spencer v. Merchant, 125 U. S. 345; Garnett v. St. Louis, 25 Mo. 505; Newby v. Platte Co., 25 Mo. 258; Uhrig v. St. Louis, 44 Mo. 458. (3) The supplemental proceedings and the assessment of benefits thereunder were authorized by the Kansas City

charter and were in accordance with the law of this State, and not in violation of the Fourteenth Amendment of the United States Constitution, nor in violation of appellants' rights. Sec. 23, art. 6, Kansas City Charter; State ex rel. v. Seehorn, 246 Mo. 568; St. Louis v. Buss, 159 Mo. 12; Drainage Dist. v. Richardson, 237 Mo. 71. And all cases cited under Point 2. (4) The decree of the circuit court in Union Pacific Railroad Company v. Kansas City did not nullify the amount of damages made in the original proceeding for the property taken. It only nullified the benefit assessment against its property under that proceeding. (5) The charter provisions of St. Louis and Kansas City on condemnation proceedings are not materially different, and the opinion and decision of the court in State ex rel. v. Seehorn, 246 Mo. 568, were right and should be followed. St. Louis v. Brinckwirth, 204 Mo. 280; St. Louis v. Ranken, 96 Mo. 497; St. Louis v. Calhoun, 222 Mo. 44; St. Louis v. Buss, 159 Mo. 9. (6) The original ordinance is not void or in conflict with the charter of Kansas City. Sec. 2, art. 6, Kansas City Charter; Lamar v. Wiedman, 57 Mo. App. 507, 514; St. Louis v. Lanigan, 97 Mo. 180; Kansas City v. Smart, 128 Mo. 293; Kansas City v. Block, 175 Mo. 444. (7) The supplemental ordinance is not void or uncertain. Sec. 23, art. 6, Kansas City Charter; Lyman v. Farris, 5 N. W. 523; People v. Railroad, 247 Ill. 340; 2 Black on Judgments (2 Ed.), sec. 584, pp. 882, 883; State ex rel. v. Rainey, 74 Mo. 229; McEntire v. Williamson, 63 Kan. 282; Clark v. Wolf, 29 Iowa, 197; Montgomery v. Walker, 25 So. 586; Parker v. Scrogin, 11 La. Ann. 631; Ashton v. Rochester, 133 N. Y. 193. (8) The matters herein are *res adjudicata*. State ex rel. v. Seehorn, 246 Mo. 541; State ex rel. v. Seehorn, 246 Mo. 568; State ex rel. v. Broaddus, 238 Mo. 189.

LAMM, C. J.—This is an appeal by corporate owners of property in Kansas City whose parcels were assessed to pay benefits to meet an award of damages to other persons whose property was taken or damaged in a proceeding to widen a street.

Kansas City, in 1909, undertook to open and widen Sixth street from the east line of Bluff to the west line of Broadway, by condemning forty feet of private property on the south side of the street—Sixth street leading from the bottoms up town and being the main travelled thoroughfare for heavy hauling between the two. The authority for this proceeding was ordinance No. 3209, and, as there are several ordinances in the record, we will call this the "original ordinance" *passim*. Under this original ordinance and in supposed compliance with charter provisions (Article 6, 1908) condemnation proceedings were instituted in a court known as the "municipal court" and ripened into judgment whereby damages were awarded for the land taken in the rise of $166,000, and the same amount was assessed against the city and over 13,000 different tracts owned by individuals and corporations, lying within a benefit district prescribed by said original ordinance. No appeal from this judgment was taken, either by any landowner whose property was condemned, nor by any landowner whose property was assessed with benefits. On that judgment the city collected of those benefit assessments the rise of $89,000 to pay said award of damages. Presently, and with matters in this fix, a certain railroad company, The Union Pacific, discovered the service on owners whose parcels were subject to assessment of benefits was defective and brought its suit in equity in the circuit court of Jackson county against Kansas City and its officers, among them one Flynn. The life of the bill was injunctive relief in its favor (as an owner of property within the benefit district and which was assessed with benefits) against such assessment of benefits in

the condemnation judgment under the original ordi-
nance. Other parties in like fix (say, two or three)
intervened. As there are several suits mentioned in
this record, we will call this the "Flynn suit" to identi-
fy it. The Flynn suit ripened into a decree in favor
of plaintiffs and intervenors. It is sufficient to say of
the Flynn suit that the condemnation judgment under
the original ordinance was not assailed for lack of ju-
risdiction in the municipal court to hear any condemna-
tion proceedings and assess any benefits to pay dam-
ages awarded therein (a newly discovered theory, now
pressed), but in substance that case proceeded on the
theory that plaintiff had no notice of the proceeding
and hence the judgment as to it was void. The chan-
cellor found a lack of notice and process (the order
of publication required by the charter was not pub-
lished a sufficient time) and that the several assess-
ments made against plaintiff's and intervenors' prop-
erties were void because of such lack of service. Hence
the municipal court had acquired no jurisdiction of
them. The scope and object of the decree in the Flynn
case are indicated by the following excerpt:

"It is, therefore, considered, ordered, adjudged
and decreed by the court, that said assessments, in so
far as they effect [sic] or purport to effect [sic] plain-
tiffs or any of them or any of their several proper-
ties, be and the same are hereby annulled and for
naught held; that the several assessments against the
respective properties aforesaid of the plaintiffs and
each of them be and the same are hereby set aside and
annulled; the defendant Kansas City; M. A. Flynn,
City Clerk; U. L. Weary, Clerk of said Municipal
Court, and the officers and agents of said city, be and
they are each of them perpetually restrained and en-
joined from making out, certifying or attesting any
tax bills against the several properties of the plaintiffs
or any of them under and by virtue of said assess-
ments, and that plaintiffs have and recover from the

defendant, Kansas City, the costs herein expended and have execution therefor."

Neither side took an appeal from the Flynn decree and it remained operative as a perpetual injunction against collecting such unpaid assessments.

With things in this fix, it seems that Kansas City attempted to repeal the original ordinance presumably for the purpose of abandoning the proceeding and returning to those paying assessments the amounts so paid. But the city was reckoning without its host; for pending such repeal measure, another injunction suit was brought in the Jackson Circuit Court—this time against the city and in favor of those property-owners whose lands had been condemned under the original ordinance and who had been awarded damages, to-wit, one Tuller and others. These new suitors, Tuller and others, took the position in their bill that on recognized equitable principles the city, under its charter, could not repeal the original ordinance and abandon such condemnation proceedings so far as those persons were concerned whose property had been taken or damaged and to whom damages had been awarded by the judgment, where (as here) benefits had been assessed and in part paid, and where (as here) such property-owners had appeared, tried out the issue as to them and recovered their damages, and where (as here) the judgment was not appealed from. We will call this case the "Tuller case" for convenience. This Tuller case also ripened into a decree whereby the city was, in effect, perpetually enjoined from repealing the original ordinance and abandoning the condemnation proceeding, and this decree also was unappealed from, but remained operative as a perpetual injunction.

By the decrees in the Flynn and Tuller cases the city (to borrow the homely similitude of one of its briefs) was enjoined "fore and aft. It could neither go forward nor backward." In this peculiar condition

it enacted an ordinance, No. 7539, which we will call the "supplemental or curative ordinance." The general object and purpose of this supplemental ordinance was to authorize a proceeding to assess and spread the balance of the benefit assessments (viz., those unpaid under proceedings on the original ordinance) over the non-paying properties in the benefit district. This supplemental ordinance was based on the authority of section 23, article 6, of the present charter of Kansas City, and ran on the theory the unpaid benefit assessments were void. The charter provision in question, together with the supplemental ordinance, will be found set forth *in haec verba* in State ex rel. v. Seehorn, 246 Mo. l. c. 549 et seq. (*q. v.*), and they will not be reproduced here. The object of said sensible charter provision was to afford a remedy when by any error, defect or omission in condemnation proceedings, assessments made against private property cannot be enforced or collected or where property in the benefit district is omitted, etc. In such case it was provided that the city may by ordinance institute and carry on supplemental proceedings to make a proper assessment against any parcel of property in the benefit district erroneously omitted or erroneously made in the first proceeding, etc.

Presently under such supplemental and curative ordinance, a new proceeding was instituted in the municipal court to make a new assessment against such properties within the benefit assessment district as had not accepted the former judgment by payment. Proper charter notice was given and, among others, the present appellants, save one, appeared. The assessments left unpaid under the original proceeding on this original ordinance were spread by this new proceeding over the nonpaying parcels in the benefit district, assessing to Kansas City her share, and the appellants here, save one, appealed from that judgment to the circuit court of Jackson county and the case was

assigned to Judge Seehorn's division. In that court such proceedings were had that the case reached a stage of the trial where Judge Seehorn announced his determination to try out the question of the amount of damages awarded to property-owners whose property was taken or damaged under the original proceeding as well as the question of assessing and spreading benefits over nonpaying properties within the benefit district—his view being that the nonpaying property-owners to be assessed with benefits were necessary parties to a proceeding awarding damages, hence a judgment void as to one was void as to the other; that to award damages and lay or spread assessments to pay them constitute an indivisible proceeding with two objects riding together.

The pleadings in this supplemental proceeding warranting such contentions, two prohibition suits were brought in this court to stop the trial in Judge Seehorn's court—one we will call the "Graham-Seehorn case;" the other, the "Tuller-Seehorn case." Preliminary rules in prohibition issued and those cases will be found reported in the 246 Mo. at pages 541 and 568 respectively.

So far as pertinent here, the Graham-Seehorn case held in judgment the main question: Had the charter court, known as the "Municipal Court," any jurisdiction whatever of any condemnation proceedings. That question we answered in the affirmative by holding the court a constitutional repository of power in that behalf. In the Tuller-Seehorn case several questions were decided. One was that in supplemental or curative condemnation proceedings, brought in the municipal court under a supplemental ordinance, as here, an appeal would lie in favor of a property-owner or any party interested to the circuit court. Another was that where such supplemental proceeding under such supplemental ordinance related only to making assessments on property against which an assessment was

erroneously made in the original proceeding or was erroneously omitted to be made, as here, the jury should not include in their verdict the assessment of benefits and damages on property *properly* included in the first verdict—i. e., those properties taken or damaged the owners of which appeared at the first trial and acquiesced in the judgment, or those properties assessed with benefits which the owners paid—but the scope of their verdict could not extend beyond the assessment of property so wrongfully made or omitted to be made. Another question decided was that the verdict and judgment in the original proceedings were valid and binding as *to those who appeared and accepted them,* and cannot be taken either as interlocutory or as vacated because of an appeal in the supplemental proceedings to the circuit court. Another question decided was that Kansas City by its charter may through its common council repeal an ordinance for widening a street and thereby a judgment for compensation and benefits in a condemnation proceeding is made void; but that such repeal is, by charter provision, restricted to "any time before any of the parties assessed with benefits shall have paid the amounts so assessed;" that the charter provision providing that no assessments made in the original proceeding in widening a street "shall be affected or interfered with for the reason that any other assessment made in the same proceeding may be invalid in whole or in part" is the basis of the power given in the charter to the city by supplemental proceedings to subject only property omitted by mistake or illegally assessed to its proportional part of the costs of the improvement, and leaves the assessment of other property in the original proceeding, either with damages or benefits, stand as regular and not to be tried anew on an appeal in a supplemental proceeding, absent an appeal from the judgment in the original proceeding, as here, and present a payment of benefits and an award of damages to per-

sons appearing, as here. Other reasons based on other charter reasons are given for that conclusion, and, among other things, it was held that .the fact that a condemnation proceeding was an entirety and the fact that the damages and benefits must balance each other are no sufficient reasons for vacating the original judgment of the municipal court as to damages and benefits settled by it and acquiesced in, and are no sufficient reasons for a trial *de novo* of such particular matters on an appeal to the circuit court from a judgment in a supplemental proceeding. Another question decided in the Tuller-Seehorn case is thus correctly epitomized in the eighth syllabus:

"Property-owners in the benefit district whose property is not taken but which will be charged with its share of the damages to be paid for the property taken for the street, are not necessary parties to the issue of the value of the property to be taken for the street; nor is it a denial of due process of law to deny to them a day in court to aid in preventing an unduly high valuation of the property to be taken, whose value in the end must be assessed against their property. The necessary parties are the city as plaintiff and the owners of the property to be taken as defendants; though, as a matter of grace, the owners of other property in the benefit district may be permitted to aid in preventing a too high valuation."

Accordingly in the Tuller-Seehorn case our writ issued and the circuit court of Jackson county was prohibited from trying the question of the amount of damages awarded to those property-owners whose property was taken or damaged by the widening of Sixth street under the original unappealed-from judgment.

Accordingly in the Graham-Seehorn case we denied a writ of prohibition.

When our judgments went down in those prohibition cases, the circuit court of Jackson county resumed the trial of the appeal from the judgment of the munici-

pal court in the supplemental proceeding at the point the trial was arrested by our preliminary rules in prohibition, proceeding to verdict and judgment in those particulars in line with our pronouncements in the prohibition cases, the verdict assessing part of the damages against the city, and part against the non-paying parcels of property in the benefit district, including appellants' parcels.

Of the 13,000 tracts involved in the assessments of benefits, an aggregation of only thirteen corporate defendants appeal on due steps on a joint bill of exceptions. There is an appellant, the Union Depot Bridge and Terminal Railroad Company, that joins in questions raised by its co-appellants, but also raises questions singular to itself. Those questions will be considered separately.

What we have to say in determining this appeal may be put under the following heads:

(1) Questions determined in the Tuller-Seehorn and Graham-Seehorn cases.

(2) New questions arising at the trial after our judgments in those two prohibition cases went down (and herein of those left open).

(3) Questions singular to the appeal of the Union Depot, etc., Co.

Of these *seriatim*.

I. *Of questions determined in the Tuller-Seehorn and Graham-Seehorn cases.*

Broadly, and as a main proposition, it is contended by appellants' aggregation of veteran counsel that we determined nothing correctly in those two cases. Therefore, nothing was set at rest and every question there involved must be reagitated and redetermined. To that end we are cited to the same authorities relied on to sustain the self-same propositions advanced in briefs in those cases and ruled adversely. It must be

apparent that if there was a general rule allowing two hearings on the same questions it would be a blazing infirmity in the law. If courts put themselves in a limbo of nonsense and set themselves continuously to planting and then pulling up, weaving and then ravelling (*vide* the classical legend of Penelope's web), to stitching and then ripping, or, what amounts to the same thing, to deciding and then setting aside their own solemn adjudications, men and their posterity would think ill of our understanding. The doctrines of the law of the case are related to *stare decisis* and *res adjudicata* and are the settled doctrines of this court —doctrines having their exceptions in emergencies, but none of those exceptions apply here. There would be no end to litigation and no certainty in the law unless we adhered rigidly to the general rule of the law of the case and applied the exception to that general rule with rare circumspection and only when a palpable wound had been inadvertently given to justice and where no injury would result from a change in our judgments. In the named prohibition cases we halted the trial below on the prayer of these appellants. Why so? To settle vital questions of jurisdiction they deemed necessary to a just hearing. We did settle them on full consideration and the trial judge resumed the trial at the point he was arrested and thereafter proceeded with it in conformity with our rulings. Delay has occurred in a matter of pressing public moment and outlays have been made on the strength of our rulings. We deem it in the nature of a scandal to the administration of the law to undo at this late day what we have done, by treading back on our tracks and sending this proceeding out of court with a tangle of confusion left behind and to the detriment of a great city, unless we are forced to do so by the imperious call of the law itself. We hear no such call. We see no such necessity. The stiff general rule is that the lower court was bound by our former decisions and

so are we on second appeal. [Gracey v. St. Louis, 221 Mo. 1. c. 5 et seq., and cases cited.] We apply that rule.

(a) It is argued on behalf of appellants, in effect, that the municipal court in which the proceeding originated is not a constitutional court for the purpose of condemning property, but that, under that instrument, exclusive jurisdiction rested in the circuit court. The industry of counsel (who, indeed, left no stone unturned) in pursuit of authority has been unable to cite us to a single Missouri case sustaining them. There is an array of them running counter in theory. The Constitution provides for a municipal court. It contains provisions authorizing the people of certain cities to frame their own charters governing themselves in municipal matters, and that they may alter and amend them.

In a line of great cases in this court on all-fours, wherein appeared great lawyers to raise questions and elucidate contentions, it has uniformly been ruled that those charter provisions relating to the exercise of the right of eminent domain and the power to prescribe benefit districts, spread benefits over lots therein, pay damages for property condemned under the exercise of the right of eminent domain, are one and all matters of purely municipal concern and are governed by charter provisions. As pointed out in the Graham-Seehorn case it was ruled that jurisdiction was properly lodged in the municipal court. This conclusion was arrived at by considering the Constitution, the charter and the pertinent general doctrine of a line of unshaken cases. Accordingly on the authority of the Graham-Seehorn case we disallow the point to appellants. In a somewhat similar case in New York (Worthington v. London G. & A. Co., 164 N. Y. 81), where the question was whether a municipal court of the City of New York had jurisdiction, and where it had been ruled adversely by some inferior courts,

BARTLETT, J. (speaking to such decisions and for the Court of Appeals) used apposite language, viz.: "This decision has such a serious effect on the business interests of a great city containing about three millions and a half of inhabitants, that the question may well be asked whether a situation is not presented where the familiar rule of construction may be applied most rigidly, that a statute can be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law, and that until every reasonable mode of reconciliation of the statute with the Constitution has been resorted to and reconciliation has been found impossible, the statute will be upheld."

The rule invoked by the New York court to prevent a statute's perishing by construction is the trite doctrine of this court to be found in almost every volume of its reports.

Take this case, to illustrate, the far-reaching effect of destroying the jurisdiction of the municipal court of Kansas City in opening and widening streets and spreading benefits over a district, thereby striking down all it has done and all its predecessor, the mayor's court, did in that city in such matters of emphatic municipal concern, led us in the Graham-Seehorn case by permissible rules of construction, to sustain the constitutional jurisdiction of the municipal court. We were glad to do that then and we are glad to stand by that ruling now. *Stare decisis*.

(b) It is argued on behalf of appellants who, it must be remembered, are not lot-owners whose property was taken or damaged, but are lot-owners whose properties are assessed with benefits, that they were entitled to be heard as parties on the question of the amount of damages, that to deny them a hearing on that issue violates those constitutional provisions guaranteeing due process of law and equal protection of the law. But this contention (with

a group of related ones we will not enumerate) was squarely held in judgment in the Tuller-Seehorn case and squarely decided against appellants. That case must be read with this, for we will not reformulate or reproduce its doctrines. Appellants had due process of law in the trial *nisi* on the question of benefits. They attempted to show there were none and took the verdict of the jury thereon and on the amount, if any. That question (benefits) relates to the power of taxation, while the part of the proceeding relating to the taking and damaging of property rests on another power, to-wit, the exercise of the sovereign power of eminent domain. They are distinct in quality and are governed by different principles. We ruled in the Tuller-Seehorn case, in effect, that lot-owners whose properties were subject to assessment in the benefit district were not necessary parties to that part of the proceeding in the sense that the validity of the judgment depended on notice to them; that as the parties whose properties were taken or damaged in the original proceeding appeared to the notice given and submitted to judgment, the amount of their damages became *res adjudicata* and were not open to further inquiry. The Tuller-Seehorn case stands on its own reasoning and on the authorities it cited and reviewed. We deem the question, therefore, foreclosed.

II.  *Of new questions arising at the trial after our judgment in the prohibition cases went down (and herein of those left open).*

(a)  It is argued that the decree in the Flynn case was *res adjudicata;* that the effect of the ruling in that case was to make void the entire original proceeding, hence there was nothing to supplement by a supplemental proceeding. If appellants' premises were true their conclusion might be allowed as sound. But under our rulings in the prohibition cases, supra, the prem-

ises are not true, hence the conclusion is unsound. Hereinbefore we set forth the material part of the Flynn decree and therefrom it appears that certain assessments alone were made void. The decree was cautious and precise in that regard. Now, in our judgment in the Tuller-Seehorn case the original proceeding so far as the amount of damages for property taken was concerned and so far as the assessments of benefits on lots whose owners acquiesced in the decree and paid the benefits were concerned, was upheld. We but follow that ruling in disposing of the point in hand as we have done.

(b) It is argued by appellants that section 23, article 6, of the charter relating to supplemental proceedings to cure errors, defects and omissions in the original proceeding has no application to the case at bar. We disallow the contention. The charter provision and the supplemental ordinance are set forth in full in the Graham-Seehorn case, 246 Mo. l. c. 549 et seq. (q. v.) The charter provision is a sensible one. In carrying through condemnation proceedings errors and omissions, despite care and pains, are likely to arise, where, as here, there are a vast number of tracts and many tract owners involved, and such supplemental proceedings are provided for in said charter provision, *inter alia*, "to properly assess against any piece or parcel of private property against which an assessment was in the first proceeding erroneously made or omitted to be made, the proper amount such private property, exclusive of the improvements thereon, is benefited by the proposed improvement," etc. Certainly in the case at bar it is well within a proper use of English to say that the assessments of lots within the district owned by persons who repudiated the proceeding were erroneously made or were omitted to be made in a true sense. To rule as appellants ask us would crib and confine the charter provision to bounds too narrow to meet the mischiefs at which it was aimed. Our

bounden duty is is to construe it (if allowable in reason so to do) to meet those mischiefs and thus further its evident purpose. Accordingly the point is disallowed to appellants.

(c)   It is further argued on their behalf that the original ordinance is void on its face for that it requires the amount allowed for private property taken to be wholly raised by special assessments against the property described in the benefit district. The point hinges on the fact that section 3, article 6, of its charter directs there shall be assessed against the city the amount of benefits to the city and public generally, inclusive of any benefit to any property of the city, and that the balance, if any, be spread over the several tracts of private property in the benefit district. The original ordinance is unhandsomely worded, but when due effect is given to all its words and its intendment is allowed to arise on the whole instrument, it will appear that the construction sought to be put upon them is unnecessarily harsh.   A law ought not to be tortured so that a vice may appear by *wringing* it.   The ordinance has the following provisions:

"And all private property within said limits is hereby taken and condemned for public use as a part of Sixth street and just compensation therefor shall be assessed, collected and paid, according to law. The amount allowed for private property taken, shall be wholly raised by special assessments made against the property described in the next succeeding section in accordance with article 6 of the charter of Kansas City, Missouri."

It will be observed it requires that compensation for condemned property "shall be assessed, collected and paid, according to law." It will also be observed that those assessments must be made "in accordance with article 6 of the charter of Kansas City, Missouri." We do not think the validity of the supplemental proceedings breaks on the point made. This because:

(1) Counsel point us to no provision of the charter requiring the ordinance to make the quoted recitals and we have not been able to put our finger on one. The charter stands on its own legs and, in that regard, seems self-enforcing. It is full and explicit, leaving no room for doubt in the particulars in hand, and, as to them, does not seem to need the adventitious aid of any ordinance.

(2) Giving effect to all the ordinance words and construing them with the charter, to which the ordinance points for the law and for the rule of making assessments, its meaning is clear enough, to-wit, that the charter is to be followed.

(3) Moreover, that was the trial theory. The charter was followed. The city was assessed its charter share and not a particle of injury came to appellants because of the objectionable phrase.

(4) But more (and most of all) the instant proceeding, in those parts vitally affecting appellants, was under the supplemental ordinance (246 Mo. l. c. 550 et seq.), and that ordinance pointed only to the charter and made a call on its provisions for the rules to govern the supplemental proceeding.

Accordingly the point is disallowed to appellants.

(d) Finally it is argued that the supplemental ordinance is void on its face because (we quote from appellants' "points and authorities") "this ordinance in vague, indefinite and uncertain in its terms and does not comply with said section 23, which required the proceedings to be 'to properly assess against any piece or parcel of private property against which an assessment was in the first proceeding *erroneously* made or omitted to be made, the proper amount,' etc., and further that 'such supplemental proceedings shall be instituted and conducted *as to the particular piece or pieces* of private property sought to be acquired or assessed,' etc."

In the evolution of their argument under this head the order of publication to property-owners is criticised for alleged equivalent vices. But it will be observed that the order of publication is wholly distinct from the ordinance and that the point made does not include that step in the proceeding directed to giving notice by order of publication. Appellants appeared to the order and tried their case on the merits. We do not say that where that is done a case might not be put where an objection might not be made at the hearing to the order of publication. But we do say that an appearance and a trial on the merits leave parties in an uncommonly serious predicament in so far as objections to the form of the order are concerned. We think there is no substantial merit in this phase of the matter.

As we gather it appellants contend that the supplemental ordinance should have described by metes and bounds or some definite description each particular tract of the 13,000 erroneously omitted or erroneously assessed in the original proceeding. We do not think so. If we rule in that way as to the supplemental ordinance it would follow that the original ordinance should particularize by precision of description each separate tract in the benefit district. Why prescribe such an enormous publication descending into so many particularities in which a variation from the fact would breed a new crop of errors and omissions? The settled practice has been not to descend to such particularity. Up to this time notice to the property-owners generally in the described benefit district and defining the district, as here, have been sufficient to bring in interested parties. It was sufficient in this instance. They came in. Not one of them had any difficulty in finding where the shoe pinched him. Each knew the issue involved and directed its proof to that issue. So that while we have been informed and instructed by the ingenious

refinement of the point, we have not been convinced it is sound.

(e) Some criticism is indulged on the instructions. It would swell this opinion beyond bounds to reproduce all of them, and thereby by ocular demonstration show that they did not conflict with each other but announced propositions of law agreeable to our rulings in the Graham-Seehorn and Tuller-Seehorn cases. We are of opinion appellants received favorable consideration at the hands of the court in instructions and that the verdict of the jury and judgment of the court ought not to be disturbed on that score.

III. *Of questions singular to the Union Depot Bridge and Terminal Railroad Company.*

The Union Depot Bridge & Terminal Railroad Company owned a small tract of land in the benefit district, was assessed a small benefit thereon in the original proceeding and paid the assessment. As we grasp it, it also laid claim to shore land on the Missouri River in the benefit district. There were other claimants for this land, among them the city, and a suit was pending in the Federal court to determine and settle title. Things were in this fix when the original condemnation proceeding was tried. We think it clear that no assessment whatever was made against this land by the original verdict and judgment. In the map filed with the original ordinance to initiate the original proceeding these disputed shore lands were marked "owned or claimed by the Union Depot Bridge and Terminal Railroad Company and Kansas City, Missouri," indorsed across them. The record is not as plain as it might be and it is possible that different hypotheses might spring because of obscurity, but a study of it leads us to the conclusion these shore lands were omitted— doubtless owing to the fact that the ownership was in controversy. Between the time of the first verdict and

judgment and the time of the supplemental proceedings a compromise was made in such Federal suit and by agreement between an aggregation of claimants certain tracts of these shore lands were given to appellant and certain parts respectively to other litigants, and a decree was entered in the Federal court vesting and quieting these respective titles. When the supplemental proceedings were brought to a head by verdict and judgment the several tracts of shore land awarded the present appellant by that decree were assessed with benefits—at first, in gross, but (subsequently by amended decree) the benefits were spread in a definite amount over each separate tract. It does not seem this appellant appeared and took any part in the trial under the supplemental ordinance and proceeding. It had the same notice by publication all other tract-owners had, but it chose the course of keeping in the background. When the verdict came in in the supplemental proceeding assessing its shore land tracts with benefits, it for the first time appeared and filed a motion for a new trial. In a nutshell it claims that the judgment in the first proceeding was *res adjudicata* on the question of its liability to assessment for these lands. This contention splits itself into branches. In the first place the hypothesis is indulged that the lands are covered by the assessment of benefits against the city in the original proceeding. Again, that they are covered by a clause in the original verdict to the effect that against lots and parcels of land lying within the benefit district as prescribed by the ordinance "and not hereinbefore mentioned and described, we assess no benefits." If the latter view be taken then appellant confronts the proposition that the first verdict in that behalf was a nullity because of lack of notice. On the other hypothesis it is sufficient to say that the record does not bear out the theory. Appellant came into the case late, and on a motion for a new trial. It filed no affidavit of newly discovered evidence. It brought to the atten-

tion of the court the Federal decree on that motion. That was not newly discovered, but we pass the point to let the matter ride off on its merits. We are of opinion that the land was erroneously omitted in the first assessment and that appellant ought not to complain over paying its share of the cost of the improvement with its coappellants and all other property-owners in the benefit district.

Other questions are raised we deem immaterial. There are a superabundance of briefs in the case, and, doing the best we can with the record, we are of opinion the judgment below was right and should be affirmed. It is so ordered.

All concur except *Graves* and *Woodson, JJ.*, who dissent for the reasons stated in their dissent in State ex rel. Graham v. Seehorn, 246 Mo. 541.