PORTLAND RY., LIGHT & POWER CO. v. CITY OF PORTLAND et al..

(Circuit Court, D. Oregon. September 12, 1910.)

No. 3,650.

1. CONSTITUTIONAL LAW (§ 280*)—TAKING PROPERTY—DUE PROCESS OF LAW—
CONDEMNATION BY CITY.

Where a municipal corporation without statutory authority was at-
tempting to condemn complainant's property for a street, it was thereby
attempting to deprive complainant of its property without due process of
law, in violation of the fourteenth amendment of the federal Constitu-
tion.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 877–
890; Dec. Dig. § 280.*]

2. COURTS (§ 282*)—FEDERAL COURTS—JURISDICTION—CONSTITUTIONAL PROVI-
SIONS—INJUNCTION.

Where a municipal corporation without statutory authority was at-
tempting to take a portion of complainant's right of way for a street, and
to deprive complainant of its property without due process of law, a fed-
eral court had jurisdiction of a suit to restrain such action.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 282.*]

3. EMINENT DOMAIN (§ 9*) — STREETS — CONDEMNATION OF LAND — POWER—
LAND REQUIRED FOR RAILROAD PURPOSES.

Where a city had only general charter power to open, lay out, establish,
widen, alter, extend, vacate, or close streets, and to appropriate and con-
demn private property therefor, it had no power to condemn a part of a
railroad's right of way to construct a street longitudinally along the same,
especially where there was no provision for joint use of the property by
the railroad company and the public.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 27–34;
Dec. Dig. § 9.*]

In Equity. Complaint by the Portland Railway, Light & Power
Company against the City of Portland and others. Demurrer to com-
plaint overruled, and preliminary injunction issued.

Frederick V. Holman, Franklin T. Griffith and Alfred A. Hamp-
son, for complainant.

Wm. C. Benbow, Deputy City Atty., for defendants.

BEAN, District Judge. This suit is brought by the Portland Rail-
way, Light & Power Company against the city of Portland and its
officers to enjoin the enforcement of an order of the common council
of the city, opening, widening, and extending Belmont street so far
as it affects the complainant's right of way. In its bill the complain-
ant avers that it is an Oregon corporation owning and operating a
street railway system in the city of Portland, and is a common carrier
of passengers for hire; that it owns and uses as a part of its system
a right of way and easement 30 feet wide over private property from
the eastern terminal of Belmont street easterly a distance of 740 feet,
and is the owner of a similar right of way through blocks S, R, and
Q of Tabor Heights, and has the right to occupy and use Motor street
between the two rights of way above mentioned, by virtue of a dedi-
cation and grant from the original owners of the property; that it

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

has a track along such rights of way and in such street and is constantly using the same as a part of its general system; that the defendant city has ordered Belmont street opened and extended, and Motor street widened from the present terminus of Belmont street easterly along and over the complainant's right of way and franchise, and is attempting to condemn and appropriate such right of way and franchise and will do so unless enjoined and restrained.

Upon the filing of the bill an order was made requiring the defendants to appear and show cause why a preliminary injunction should not issue, in obedience to which they have demurred to the bill on the ground that it appears therefrom that the common council of the city had jurisdiction of the subject-matter and of the parties, and proceeded regularly and in accordance with the provisions of the charter in the matter of the opening and widening of such streets and the appropriation of private property therefor, and therefore complainant's remedy is by an appeal from the award of the appraisers, or by some direct proceeding to review the action of the common council, and not by an independent suit to enjoin the enforcement of the order for the opening of the street. This argument overlooks the pith of this controversy. The complainant's position is not that the proceedings of the common council are irregular, but that it is an attempt to deprive it of its property without due process of law, in violation of the fourteenth amendment to the federal Constitution, inasmuch as the city has no power under its charter to take or appropriate its right of way or franchise for street purposes. If the order of the common council under its authority to open streets has deprived, or is about to deprive, the complainant of its property without due process of law, it is entitled to a remedy in this court, under Judiciary Act March 3, 1887, c. 373, 24 Stat. 552 (U. S. Comp. St. 1901, p. 508), and the federal Constitution. Iron Mt. Ry. v. City Memphis, 96 Fed. 113, 37 C. C. A. 410.

The question therefore is one of power and not of procedure. If the city has the power and authority to lay a street longitudinally along and over the complainant's right of way and to appropriate it therefor, to the exclusion of the complainant, there is an end to the controversy as far as this court is concerned. If, however, it has not such power, its proceeding is manifestly an attempt to deprive the complainant of its property without due process of law, and it is entitled to invoke the aid of this court to prevent the threatened wrong. The fourteenth amendment is a guaranty to every citizen, private or corporate, that he or it shall not be deprived of property by a state or any of its political subdivisions without due process of law, and the federal court has jurisdiction to enforce this guaranty. The taking of private property by a municipality without authority is clearly such a taking. The court therefore has a right, and it is its duty, to inquire into the charter powers of the defendant city to ascertain whether it has power to take and appropriate the complainant's property for the extension, opening, or widening of the street. The only authority of the city to open streets is a general power given it by section 347 of its charter "to open, lay out, establish, widen, alter, extend, vacate or close streets and to appropriate and condemn private property therefor." It has no express authority to condemn or appro-

priate the property of a public service corporation or property already devoted to a public use, or to lay a street along the same.

The general rule is that a municipal corporation, under general authority to condemn land for public streets, has no power to lay a street longitudinally over ground legally acquired by a railway and occupied by it for its tracks and roadbed, although it may extend streets across such right of way. 2 Elliot on Ry., § 966; 2 Abbott on Mun. Corporations, 756; 15 Cyc. 619; 10 Ency. 1096; M. & St. P. Ry. v. City Fairbault, 23 Minn. 167; St. P. Union Depot v. City St. P., 30 Minn. 359, 15 N. W. 684; N. J. S. Ry. v. Com. Long Branch, 39 N. J. Law, 28. This is on the theory that the property is already devoted to a public use, and cannot, unless the authority to do so is manifest in express terms or by necessary implication, be appropriated by procedure in invitum to a different public use, when the second use will destroy or impair the use to which the property is already devoted. Oregon Short Line v. Postal Tel. Cable Co., 111 Fed. 842, 49 C. C. A. 663.

Now, under the language of the order of condemnation and appropriation in this case, the complainant is absolutely deprived of its property and the use thereof. The order opening the street and appropriating property therefor describes the boundaries of the proposed extension and widening of the streets by metes and bounds and includes "all that part of the Portland Railway, Light & Power Company's right of way lying within the boundaries of the proposed opening, widening and extension of Belmont street as above described." There is no exception, reservation, or proviso by which the company is to be permitted to use the street or any part thereof for railway purposes. Under the proceedings, if carried into effect, the control and supervision of the entire street will belong exclusively to the city with the right to prevent its obstruction or use by the complainant, and the complainant will be deprived of any right to use or enjoy the street or to maintain its tracks thereon or to operate its cars thereover.

The city attorney, at the argument, disclaimed any intention by the city to injure or impair the use of the proposed street by the complainant company. It may be that it did not intend to do so. But under the condemnation proceedings and the description of the property appropriated as contained in the order opening the street, the ownership and control of the complainant's right of way would pass from it to the city, and it would have no right to use it except by consent of the municipal authorities, and this, in my judgment, the city has no power or authority under its charter to do. B. & A. Ry. Co. v. Cambridge, 166 Mass. 224, 44 N. E. 140. It is probable that a city, under the general power to open streets, may lay a street along or over the right of way of a street railway company provided it does not interfere with the use of the street by the company. It is doubtful whether such an appropriation to a public use would be so inconsistent with the previous public use as to be invalid. See O. Short Line v. Postal Tel. Cable Co., supra. But, however that may be, the city, as appears from the bill of complaint, has not proceeded upon any such theory. It has attempted to condemn and appropriate the entire right of way and franchise of the complainant corporation, without

any exception or reservation, and the right to the property which, if valid, the taking would vest in the city, is not conditional but absolute. The demurrer to the complaint will therefore be overruled, and a preliminary injunction issued.