MISSOURI EDISON COMPANY, a Corporation, (Plaintiff) Appellant,

v.

Raymond B. GAMM and Helen B. Gamm, (Defendants) Respondents.

No. 31529.

St. Louis Court of Appeals. Missouri. May 19, 1964.

McIlroy & Millan, John M. McIlroy, Bowling Green, for plaintiff-appellant.

Paul E. Williams, Bowling Green, Edward A. Glenn, Louisiana, Mo., for defendants-respondents.

FRANK W. HAYES, Special Judge.

This is a condemnation proceedings brought by Appellant (Plaintiff below), Missouri Edison Company, a corporation, against Raymond B. Gamm and Helen B. Gamm, Respondents (Defendants below) to condemn an easement or right of way 100 feet wide across the respondents' farm for the construction and maintenance of an electrical power transmission line for public use. Appellant in its petition covenants that it would install necessary gates, cut and remove trees, would not fence tract involved, would not require exclusive use of said tract except where occupied by its poles; that respondents to have continued use of balance of said land and shall not construct any permanent or temporary structure beneath or near power conductors which will create actual or contingent hazards; that it shall have necessary egress and ingress; patrol by foot only within the limits of right of way; would replace fences; would not, after construction of transmission line, erect any other structure except as replacement; would enter area only at ends of strip only; would pay all damage for crops, fences and land which may be suffered from erection, operation and maintenance of said line.

The respondents Gamm own a farm of approximately 384 acres near Bowling Green, Missouri, in Pike County, about one and one half miles from junction of 61 and 54 highways. They acquired the Hedges place in June, 1958, and the Henrichsen place in March, 1959. These pieces of land lay together and are operated as one unit. The appellant seeks an easement one hundred feet wide across defendants' land on which were erected eight one-pole structures. Respondents claim that under this easement there was a deposit of limestone. Test borings were made, some as deep as seventy feet, and the rock at the bottom was the same as at the top. Samples were sent to University of Missouri Laboratories. An analysis disclosed that the deposit consisted of dolomite limestone which is used as agricultural fertilizer. It was estimated that there was possibly 700,000 tons of agricultural fertilizer in this easement area.

There were eight single poles with crossarms in the easement area. They carried three transmission lines of 69,000 volts and one static wire. Appellant produced evidence that the limestone deposit could be mined despite the presence of the easement and the structures on it. Respondent produced evidence that the presence of the power line and existence of the easement would make it difficult if not dangerous to mine the limestone in the area. Some evidence was to the effect that blasting could be safely done from 300 feet to 100 feet or 35 feet from the power line installation.

The amount of damage sustained by respondents by the taking of the easement and building the power line varied greatly. Respondent Gamm fixed the difference in the value of the farm immediately prior to the taking and immediately after the taking at $35,000.00 and witness Word at $30,000.00. Appellant's witnesses appraised respondents' damages at much smaller amounts. Witness Middleton fixed the damage at $1200.00; witness Clark at $1000.00; witness Botkin at $500.00 to $1000.00. Appellant's witnesses, however, did not consider the presence of the limestone, nor its sale or inability to mine it, in arriving at their appraisals. The jury gave respondents a verdict for $8,270.-00, from which judgment the appellant appeals, contending that Court erred in admitting certain testimony of respondents' witnesses, in rejecting certain testimony of its witnesses, and in giving Instructions 3 and 4 for respondents. These assignments will be considered in turn.

█ Appellant contends that Court erred in permitting respondents' witness, Gerwin Rohrbach to testify respecting marketing of limestone, availability of limestone, and amount of limestone on the property in question because such testimony was in nature of expert testimony and that said witness did not qualify as an expert. The trial judge has a broad discretion in determining whether or not a particular witness has sufficiently qualified to give an expert opinion on the subject and in absence of abuse of this discretion cannot be charged with error. State ex rel. State Highway Commission v. Cone, Mo., 338 S.W.2d 22; Wardin v. Quinn, Mo.App., 324 S.W.2d 151; Yocum v. Kansas City Public Service Company, Mo., 349 S.W.2d 860. The witness testified that he was a planning consultant and economic marketing analyst, and President of a company known as General Planning and Resource Consultants; that he studied at Harvard College in the field of government economics; was consultant to various governmental agencies in several states in fields of community development, economic planning and resource use; that

he studies present resources and future use of those resources based on the present and projected need of a population and area and examined in detail respondents' property as to the use of that property and as to the resources on that property. We conclude that trial court did not abuse its discretion in permitting the witness to testify respecting marketing of limestone and use and availability of limestone. As to the amount of limestone on respondents' property, his testimony was based on actual core borings made by University of Missouri technical staff and an analysis of their reports. The trial court did not err in permitting this witness to testify.

█ Appellant urges that trial court erred in permitting witnesses Tom Fitzgerald and Ray Bibb to testify as to quantity of limestone on respondents' farm. Fitzgerald testified that he was managing the Magnesium Mining Company which mines limestone for use as commercial fertilizer with its main quarry site about a mile from respondents' land. He was associated with the company for several years prior to becoming manager. At request of respondents, he and others under his supervision drilled some test holes on the easement area. They drilled one hole, near the silo, forty feet deep and one seventy feet deep at the crown of the hill. They did not run out of stone at either location. This witness did not testify as to the *quantity* of limestone in the area and it was not error for him to testify as the result of the boring. There is no merit in this contention. Appellant assigns as error that witness Ray Bibb testified as to quantity of limestone on respondents' farm and profits of own quarrying operation. No objection was made to any of this testimony and, of course, appellant cannot now complain.

█ Appellant contends that court erred in permitting witnesses Thomas Fitzgerald, Ray Bibb and Dr. F. W. Fitzgerald to testify concerning the quarrying operation they operated, the price per ton, the supply they had and profits from their op-

eration because it was irrelevant and immaterial. The issue in the case was whether respondents' property was damaged because appellant's easement was located over a deposit of agricultural limestone. If the jury found there was damage, then the amount of limestone available, and its market price, was relevant and material in assisting jury to determine the extent of respondents' damages. Without burdening this opinion with a résumé of the testimony of these three witnesses, the court, after an examination of the record herein, finds that the testimony complained about was either not objected to by appellant at the trial or that it was relevant and material to the issues before the jury and was properly submitted to them.

■ Appellant claims court erred in refusing to permit its witness Van Shive to testify that appellant would not have any objection to the use of the land in the easement for quarrying purposes. The manner in which the condemned land is to be used is to be made of record in plaintiff's petition by express covenants and is not to be determined by testimony of its witnesses. Union Electric Co. v. Levin, Mo.App., 304 S.W.2d 478; State ex rel. N. W. Electric Power Co-op, Inc., v. Waggoner, Mo.App., 319 S.W.2d 930.

■ Appellant contends that trial court erred in refusing to permit witnesses Jurotich and Engelarge to testify as to blastings by their companies under power lines. Witness Jurotich was employed in real estate department of Union Electric Company. Witness was familiar with Vigus South quarry which quarries road material. There was no showing by appellant that there was any similarity between the operations there and here and the court properly ruled the matter. As to witness Engelarge, he testified he was employed by Tavern Rock Sand Company as Plant Manager and that his company produced silica sand; that they did not produce agricultural limestone and did not blast under the power wires and did not come closer to 300 feet of the wires

in their blasting. It is evident the court ruled properly as to this witness. However, it is evident the plaintiff was not prejudiced by court's rulings supra. Plaintiff's witness Cooksey testified that he was in the rock quarry business at Moberly, Missouri, and produced agricultural limestone. His testimony established a similarity between quarrying on his land and on respondents' property. He testified as to blasting under high voltage lines and as close as thirty-five feet from the power line. There was evidence, therefore, in the record that respondents could quarry the land beneath appellant's power lines.

■ Appellant contends that the court erred in giving Instruction No. 3 for respondents, which is as follows:

"The term 'fair market value' means the price which property would bring when offered for sale by one willing but not obliged to sell it, and is bought by one willing or desirous to purchase it but is not compelled to do so. Fair market value does not mean the price it would bring where the party selling is forced to sell, or where it is sold for other considerations in addition to the money paid, but rather what the land would fairly bring in the hands of a prudent seller at liberty to fix the time at which he would sell and the conditions under which he would sell. The question is, if the defendants wanted to sell their property, what could have been obtained for it upon the market from parties who wanted to buy it before June 1, 1960, and after that date, and would give its full value for its highest and best use.

"In determining its fair market value the Jury should take into consideration its location, the uses for which it is suitable at such location, proximity to roads and access, proximity to transportation, if any, and all the uses to which it may best be applied or for which it is best adapted, having regard not alone for the existing business wants of the community but also such uses as may be reasonably expected in the immediate future. In determining the uses and

purposes for which the lands were suitable or adaptable, the Jury is not confined to the use made of the land at the time it was taken."

■ It asserts said Instruction gives the jury a roving commission to take into consideration the irrelevant, immaterial and highly speculative testimony admitted on behalf of respondents. Instruction No. 3 is practically identical with Instruction I approved by the Supreme Court in City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839, 843. The highest and best use to which the property is adapted or likely to be needed or used in the reasonably near future is to be considered. Union Electric Company of Missouri v. McNulty, Mo., 344 S.W.2d 37; State ex rel. Board of Regents for Central Missouri State College v. Moriarty, Mo. App., 361 S.W.2d 133. Instructions substantially the same as Instruction No. 3 have been approved in the above cases and in In re Armory Site in Kansas City, Mo., 282 S.W.2d 464; Proceedings for Condemnation of Private Property for Sixth Street Expressway, Kansas City v. National Engineering and Manufacturing Company, Mo.App., 274 S.W.2d 490; Union Elec. Co. v. Jones, Mo., 356 S.W.2d 857; Union Electric Co. v. Simpson, Mo., 371 S.W.2d 673. The trial court did not err in giving Instruction No. 3, supra.

■ Appellant in its brief urges the court erred in giving Instruction No. 4 because it referred to "high poles" and there was no evidence as to high poles. Instruction No. 4 is as follows:

"In assessing damages sustained by the defendants, Raymond B. Gamm and Helen B. Gamm, by the taking of their land, you are instructed that their land is to be regarded as one unit, and their damages consist not only of the diminution of the reasonable value of the five and 86/100 acres of land in the actual easement, but in addition, the injury to or reduction in the value, if any, to the remaining 378.14 acres of their land, caused by the taking.

"Such damage to the remainder, if any, must be direct and certain at the time of the taking, June 1, 1960. In fixing such damage, if any, to the remainder, you will take into consideration all facts in evidence relating to the condition of the remainder of the property as a result of the taking, which would naturally impress a reasonably prudent buyer in negotiating for the purchase of the remainder, the reduction in value, if any, caused by the decrease in demand for the land, if any, and for such damages, if any, caused by the establishment, erection and maintenance of the high poles and wires in the easement area, and all matters mentioned in the evidence, which owing to the taking of the land affects the further use, enjoyment and value of the land as a whole, in so far as it affects the market value thereof, and the fact that the law presumes that the Plaintiff will exercise its rights and powers to the fullest extent."

Petition recites that wooden poles used in the construction will not be less than fifty-five feet or more than seventy-five feet in length. Mr. Williamson, construction superintendant for appellant, testified that the pole they were describing there would be a fifty foot pole. In Louisville & N. R. Co. v. Tucker's Adm'r, Ky., 65 S.W. 453, 454, the court says:

"* * * 'High' and 'low' are relative terms. A thing is said to be high or low when compared to other things. A structure is said to be high or low according to the uses to which it is to be put. So, in this case, the bridge is high or low according to the height of cars to pass under it. * * *"

So in the case at bar, it would not be erroneous or prejudiced to appellant to refer to a fifty foot pole as a "high pole" with reference to the machinery, implements, etc., of respondents which would pass over the easement during its use by respondents and under the wires supported by a fifty foot pole. The poles being high would be to appellant's advantage as they would sup-

port the electrical wires high enough not to interfere with respondents' normal use of the land in the easement. Under the evidence it was not error to refer to the fifty foot poles as "high poles."

As to appellant's assignment that Instruction No. 4 is subject to the same criticism as Instruction No. 3, suffice it to say that such criticism is answered by cases cited as to the correctness of Instruction No. 3. There was no error in giving Instruction No. 4.

Witness John Word testified that he was in the real estate business and had made many appraisals and had appeared as a witness as to appraisals in many lawsuits. He had gone to the Gamm farm and examined it with the idea of making an appraisal particularly with reference to the easement of appellant. He testified that, in his opinion, before the taking, the farm was worth $75,000.00; and that, after the easement, the value would be $45,000.00. He took into consideration there was a lime deposit within the easement. The value of minerals in land taken by eminent domain is to be considered in determining the value of such land. 29 C.J.S. Eminent Domain § 174, p. 1043. Respondent Gamm testified that the value of the farm with limestone deposit before the easement was $85,000.00, and after the taking of the easement was $50,000.00. Appellant's witnesses on value and damage were three real estate men who put the difference between the market value before and after the taking from $500.00 to $1200.00. The verdict was for $8270.00.

The contention that the verdict was not supported by substantial evidence is obviously without merit. Respondents' witnesses were qualified to give their appraisals. The appellant's witnesses testified to smaller amounts but they admitted they disregarded the presence of the limestone. The presence of the limestone was an element to be considered. Value and damages in a condemnation proceedings are not susceptible of precise proof and in many cases can only be approximately shown by the opinions of witnesses having the requisite information. State ex rel. State Highway Commission v. Mink, Mo. App., 292 S.W.2d 940. The weight of the evidence was for the jury and there was substantial evidence to support their verdict.

Respondents' motion under Court Rule 83.13, paragraph (d), V.A.M.R., to add ten percent to the judgment herein is overruled.

The judgment of the trial court is affirmed.

RUDDY, P. J., and WOLFE, J., concur.