In re Proceedings Taking and Condemning Private Property In Kansas City.

KANSAS CITY, Missouri, a Municipal Corporation, Appellant,

v.

James G. ASHLEY, Sr., et al., Respondents.

No. 51618.

Supreme Court of Missouri, Division No. 1.

Sept. 12, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 10, 1966.

585

Herbert C. Hoffman, City Counselor, Ned B. Bahr, Assoc. City Counselor, Benj. M. Powers, Sp. Counsel, for appellant.

Charles W. Hess, Kansas City, for respondent, Ashley, Linde, Thomson, Van-Dyke, Fairchild & Langworthy, Kansas City, of counsel.

Abraham E. Margolin, Norman M. Arnell, Margolin & Kirwan, Kansas City, for respondents American Academy of General Practice, Inc., Twin Oaks, Inc., Althea Steil and Louis Mang.

Maurice O'Sullivan, Kemp, Koontz, Claggett & Norquist, Kansas City, for respondent Rock Springs Realty, Inc.

Seth Lacy, Lacy & Lacy, Kansas City, for respondent Meadow Park Land Co.

Loeb Granoff, Rich, Rich & Granoff, Kansas City, for respondents Safehi Realty Co. and Emma Seymour.

Terence M. O'Brien, Kansas City, for respondent Cecilia W. Bradley.

Dick H. Woods, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for respondents Second Presbyterian Church of Kansas City, Gladys Schnorf, Howard M. and Frances C. Gaston and Katz Drug Co.

Charles L. Carr, Kansas City, for respondents Theodore and Doris Aschmann.

HIGGINS, Commissioner.

Appellant's condemnation proceeding was dismissed upon respondents' motions to dismiss which raised a constitutional question of lack of power and authority in appellant to condemn a railroad right of way longitudinally.

Appellant is a constitutional charter city under Article VI, Section 19, Constitution of Missouri, 1945, V.A.M.S., and it brought this condemnation proceeding under Articles I and VI of its charter. Appellant's Ordinance 24408, together with the required plat prepared by appellant's city engineer, was filed as the pleading in this condemnation suit November 25, 1959. The ordinance provided in pertinent parts:

"WHEREAS, it is necessary for the convenience and safety of the public that a nonaccess freeway be provided to facilitate movement of north and south vehicular traffic to and from the congested downtown area and the outlying areas in a southerly section of the city; and

"WHEREAS, the right of way owned by Kansas City Public Service Company and now used for a single track railroad * * * to serve certain businesses and industries, to the extent that said right of way extends from the southerly line of Westport Road to the center line of Prospect Avenue in Dodson is deemed suitable and necessary for said nonaccess freeway for public use, NOW, THEREFORE,

"BE IT ORDAINED BY THE COUNCIL OF KANSAS CITY:

"Section 1. That a nonaccess freeway or highway be and the same is hereby opened

and established and shall be constructed from the southerly line of Westport Road to the center line of Prospect Avenue in the Dodson area, including in its boundaries the lands hereinafter described.

"Section 2. The following lots and tracts of private property hereinafter described are hereby condemned and taken for public use for said freeway * * * : (Here follow descriptions of property taken, same being a strip of land 100 feet wide and approximately eight miles long except for part of the strip which is 50 feet wide and 1,282 feet long.)

"Section 3. Said condemnation shall be subject to, and there are reserved to Kansas City Public Service Company, its subsidiaries, successors and assigns, such rights as Kansas City Public Service Company now has to use said right of way for railroad purposes, * * *. Such improvements as the City may make upon said freeway shall be at the expense of the City and the City shall have the right to cause the relocation of rails, ties, tracks, poles, wires, and other appurtenances within said right of way, at its own expense, but not in such manner as to prevent the rendition of adequate and efficient railroad service.

"Section 4. No abutting owners shall have the right of direct access to or from said freeway or its right of way, but this provision shall not be deemed to prevent the delivery of freight by or to abutting owners or others using the service of Kansas City Public Service Company, its subsidiaries, successors and assigns, for railroad transportation.

"Section 5. Just compensation for the private property herein condemned and taken, and damages accruing by reason of said improvement shall be assessed and paid according to law * * *."

Several motions seeking dismissal of the proceeding alleging the ordinance to be invalid and unconstitutional were filed, after which appellant obtained a continuance to amend its ordinance "as an amended plead-ing to clarify the interests intended to be taken and to indicate there was a taking of all of the railroad owner's right-of-way interest, and (deleting) the reservation." The amended ordinance, Ordinance 26364, was filed August 28, 1961, and it provided in pertinent parts:

"WHEREAS, it is necessary for the convenience and safety of the public that a non-access freeway be provided to facilitate movement of north and south vehicular traffic to and from the congested downtown area and the outlying areas in the southerly section of the city; and

"WHEREAS, there is now pending in Division No. 3 of the Circuit Court of Jackson County, Missouri, Cause No. 621,035, a proceeding to condemn certain private property and rights therein for the right of way for a nonaccess freeway authorized by said Ordinance No. 24408, and by reason of pleadings filed in said cause, it appears necessary to clarify the description of the easement, rights, and interests intended to be condemned and taken thereby, and to describe the private property and rights taken with such particularity that all ambiguity therein be removed; and

"WHEREAS, for said reasons, it is necessary to strike out and repeal from said Ordinance 24408 all the provisions of Sections 1, 2, 3, 4 and 5, and to enact and insert in lieu thereof new sections 1 and 2, and re-enacting as a new section 3 the provisions of section 5 of said Ordinance 24408; and

"WHEREAS, the amendment of Ordinance No. 24408 in the above respects should be completed as soon as possible in order that said ordinance, as amended, may be filed promptly as an amended pleading in the aforesaid Cause No. 621,035 * * *. NOW THEREFORE,

"BE IT ORDAINED BY THE COUNCIL OF KANSAS CITY:

"Section A. That Ordinance No. 24408, passed October 16, 1959, is hereby amended by striking out and repealing therefrom all

of sections 1, 2, 3, 4 and 5 thereof in their entirety, and enacting in lieu thereof new sections 1, 2 and 3, and incorporating the same description by metes and bounds of the tracts condemned, and re-enacting as new section 3 the provisions of section 5 of Ordinance 24408, all relating to the same subject and plan of improvement, and which shall read as follows:

"Section 1. That a controlled access freeway or highway be and the same is hereby opened and established over and upon all of the lands described in Section 2 hereof by metes and bounds, extending from the southerly line of Westport Road to the center line of Prospect Avenue in the Dodson area, including in its boundaries the tracts hereinafter described.

"Section 2. All of the lands, property, interests, ownerships of or legal rights which are claimed by all parties in the following lots and tracts of private property is hereby condemned and taken for public use as an easement for a controlled or non-access freeway or highway, to be known as the Country Club Freeway, all of said lots and tracts being in Kansas City, Jackson County, Missouri, and described as follows: (Same as in Ordinance 24408.)

"Section 3. Just compensation for the private property herein condemned and taken, and damages, if any, accruing by reason of said improvement shall be assessed and paid according to law * * *.

"Section B. It is the intent of the Council that the plan of improvement incorporated in and all portions of Ordinance 24408, passed October 16, 1959, shall remain in full force and effect, except as to the aforesaid matter stricken and repealed therefrom and the new matter inserted in lieu thereof by way of amendment, for the purpose of clarifying and more particularly describing the rights and interests condemned herein.

"It is declared that the aforesaid changes do not constitute an abandonment of the proceedings in Cause No. 621,035, instituted pursuant to said Ordinance No. 24408, or affect the continuity of said proceedings except as to clarify the private property, rights and interests taken for public use."

The Kansas City Public Service Company changed its name to Kansas City Transit, Inc., and the interest it owned in connection with this proceeding was transferred to its subsidiary, Kansas City and Westport Belt Railway Corporation, and it transferred the interest to respondents James G. Ashley, Sr., and James G. Ashley, Jr. The Ashleys contracted with the Belt Railway to continue railroad switching service in the same manner as they had rendered such public service under previous contract with the Kansas City Public Service Company and they were operating the railroad under tariffs filed with the Interstate Commerce Commission and the Missouri Public Service Commission at the time of the hearing when the proceeding was dismissed.

The motions to dismiss which resulted in the order of dismissal suggest three categories of movants-respondents: (1) The Ashleys as owners of the railroad right of way sought to be condemned; (2) American Academy of General Practice, Inc., Twin Oaks, Inc., Althea Steil and Louise Mang, Rock Springs Realty, Inc., Meadow Park Land Company, Emma Seymour, Safehi Realty Company, Cecilia W. Bradley, Second Presbyterian Church of Kansas City, Gladys Schnorf, Howard M. and Frances C. Gaston, and Katz Drug Company (Academy, et al.), owners of properties abutting the railroad right of way; and (3) Theodore and Doris Aschman, abutters who claim additional interest as owners of an alleged private road of necessity across the right of way.

It is admitted that this is an attempt to condemn a railroad right of way lengthwise or longitudinally at a time when it was devoted to a public use by operation of a railroad thereon; that "all matters presented for appellate review are on the pleadings, which include ordinances, motions and

judgment of dismissal," and the grounds for dismissal in the motions are in substantially the same language as the reasons stated by the trial court for sustaining the motions and dismissing the condemnation proceeding:

"(a) Kansas City does not have the jurisdiction or power, either expressly or impliedly, to condemn an operating railroad right-of-way lengthwise for a public highway, and the said movants have a sufficient compensable interest in the railroad right-of-way sought to be condemned to raise said question.

"(b) The railroad being presently operated upon the right-of-way involved is operated under tariffs filed with the Missouri Public Service Commission and with the Interstate Commerce Commission, and Kansas City has failed as a condition precedent for maintaining this proceeding to obtain permission from the Federal Interstate Commerce Commission and the Public Service Commission of Missouri authorizing the presently operating railroad to cease operation.

"(c) That the maintenance of this proceeding by Kansas City would constitute an abandonment (either actual or constructive) of the railroad right-of-way for which it has no authority.

"(d) That said railroad right-of-way is property already devoted to a public use and Kansas City cannot substitute one form of highway for the present form of public highway or railroad use.

"(e) That Kansas City acting through its City Council by passing Ordinance 26364 on July 14, 1961, seeks to cause an abandonment of the railroad right-of-way by taking all the legal rights of the present operating railroad so as to deny its operation, but said Ordinance 26364 does not constitute such a departure from the original proposed condemnation ordinance so as to constitute an abandonment of the proceeding.

"(f) That movants, James G. Ashley, Sr., and James G. Ashley, Jr., doing business as Kansas City Public Service Freight Operation, are not estopped to contest the validity of the condemnation proceeding * * *."

Respondents have moved to dismiss this appeal for alleged failure to comply with appeal provisions of the Kansas City charter; but it appears from the transcript that the appeal was perfected within the time granted by the trial court and that compliance with other provisions is sufficient to justify overruling such motion in this case.

Appellant contends that under its constitutional charter it "has broad powers of eminent domain and may exercise same to take the railroad right-of-way described by its ordinance 26364."

■ Kansas City has the power "to exercise the right of eminent domain and to condemn property, real or personal, or any right, interest, easement, restriction or use therein, within or without the City or state for any public or municipal use or purpose," Article I, Section 1(9), Kansas City, Missouri, Charter, 1956, and such provision has the force and effect of an act of the legislature so long as it is consistent with the constitution and laws of the state, Giers Imp. Corp. v. Investment Service, Mo., 235 S.W. 2d 355, 358[3]; Kansas City v. J. I. Case Threshing Mach. Co., 337 Mo. 913, 87 S.W. 2d 195, 202[6]; State ex rel. Kansas City v. Lucas, Mo., 296 S.W. 781, 784[1]; Brunn v. Kansas City, 216 Mo. 108, 115 S.W. 446; State ex rel. Graham v. Seehorn, 246 Mo. 541, 151 S.W. 716; Turner v. Kansas City, 354 Mo. 857, 191 S.W.2d 612, 616[4]; Kansas City v. Liebi, 298 Mo. 569, 252 S.W. 404, 28 A.L.R. 295.

Appellant does not contend that it has express authority to condemn a railroad right of way longitudinally, but argues that its power to take "any property for public or municipal use is unlimited." In making the argument appellant recognizes the exception when the condemnor seeks "to devote same to a conflicting or inconsistent use." The general rule is stated in 29A C.J.S. Eminent

Domain, § 74, page 326: "* * * property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use, unless the intention of the legislature that it should be so taken has been manifested in express terms or by necessary implication, mere general authority to exercise the power of eminent domain being in such case insufficient," and this rule has been held to apply except "where the power of eminent domain is being exercised by the sovereign itself, such as the state or federal government, * * * rather than by a * * * municipality." State ex rel. State Highway Commission v. Hoester, Mo., 362 S.W.2d 519, 522[2, 3]. The rule has been applied in respect to taking a railroad for a street, e. g., "* * * a power to appropriate the property of the railroad in such a manner as to destroy or greatly injure its franchise, or render it impossible or very difficult to prosecute the object of the organization," could not be inferred. City of Hannibal v. Hannibal & St. Joseph R.R. Co., 49 Mo. 480, 481. Other jurisdictions have also applied the rule: "The general rule is that a municipal corporation, under general authority to condemn land for public streets, has no power to lay a street longitudinally over ground legally acquired by a railway and occupied by it for its tracks and roadbed, although it may extend streets across such right of way", Portland Ry., Light & Power Co. v. City of Portland, 9 Cir., 181 F. 632, 634; and "'[u]nder a general authority to condemn lands for streets, a street may be laid out across a railroad, but not longitudinally on the railroad track. Under general laws, property cannot be taken, where the appropriation will destroy or impair the exercise of the franchise of another corporation, unless the power to take is given in express terms, or arises from a necessary implication. * * *.' But under a general authority to lay out highways a part of the right of way of a railroad cannot be taken longitudinally;" Union Pac. Ry. Co. v. Kindred, 43 Kan. 134, 23 P. 112, 113. See also City of Moline v. Greene, 252 Ill. 475, 96 N.E. 911, 913[2], 37 L.R.A.,N.S., 104. The texts have also given expression to the general rule: "The rule is that where property is already devoted to one public use it cannot be taken for another public use, unless there is a statute which clearly authorizes such a taking," 3 Elliott, Railroads, 3d Ed., § 1572, p. 383; "* * * a general authority to lay out streets will not authorize the municipal corporation to establish a street on the line located by the railroad company," 1 Elliott, Roads and Streets, 4th Ed., § 247, p. 297; and "* * * if a municipality merely seeks to extend a street over a railroad right of way * * *, it is well settled that the use is a consistent one and that the general power to condemn land for streets is sufficient to authorize the condemnation of so much of the right of way as is necessary for a crossing. On the other hand, if the extension of a street across a railroad track will preclude the railroad from using its tracks, or the two uses cannot coexist, or the use by the railroad company will be materially impaired or destroyed, a municipality cannot extend a street across railroad property in the absence of statutory authority expressly or by necessary implication granted. * * * where no special provision is made by statute for taking the land of a railroad company, a municipality cannot condemn for a street a strip of land on which the tracks of the railroad company were laid longitudinally, unless a joint use of the strip for street and railroad purposes simultaneously is contemplated," 11 McQuillin, Municipal Corporations, 3d Ed.Rev., § 32.71, p. 432. The rule has also been applied in refusing to permit condemnation of property devoted to school uses for a highway under general powers of eminent domain. City of St. Louis v. Moore, 269 Mo. 430, 190 S.W. 867, 869; Cochran v. Wilson, 287 Mo. 210, 229 S.W. 1050, 1055[3]. Application of the rule and its exception as stated by McQuillin, supra, may be found in City of Long Beach v. Wright, 134 Cal.App. 366, 25 P.2d 541, 545[4], and City of Los Angeles v.

Allen, 32 Cal.App. 553, 163 P. 697, 698, where the condemnor alleged in its petition that it did not seek to prevent or interrupt operation by the railway company on the land sought to be condemned. See also Portland Ry. Light & Power Co. v. City of Portland, supra, 181 F. l. c. 634[3], and Oregon Short Line R. Co. v. Postal Tel. Cable Co., 9 Cir., 111 F. 842, 846, stating that to authorize a second condemnation of properties already devoted to public use to a second use which is subversive of the first there must be specific legislative authority.

■ Kansas City does not possess any powers of the sovereign to enable it to condemn property already devoted to public use as can the State of Missouri, State v. Hoester, supra, and the United States, United States v. Carmack, 329 U.S. 230, 236, 67 S.Ct. 252, 91 L.Ed. 209; its charter provides only for a general right of condemnation, and it does not provide specifically for taking the easement of a railroad company. It is, therefore, subject to the general propositions previously stated.

■ This proceeding was begun by enactment and filing of appellant's Ordinance 24408 which stated that the property to be taken was a railroad right of way held and used by a railroad with right to continue its operation being reserved to the railroad. However, this ordinance (and pleading) was amended by enactment and filing of Ordinance 26364 and by its clear and unequivocal language, the railroad reservation is deleted and it is absolutely deprived of its easement and the use of it. The description of the land to be taken for street purposes is coextensive with the longitudinal railroad right of way, and "[t]here is no exception, reservation, or proviso by which the company is to be permitted to use the street or any part thereof for railway purposes. Under the proceedings, if carried into effect, the control and supervision of the entire street will belong exclusively to the city with the right to prevent its obstruction or use by the (railroad), and the (railroad) will be deprived of any right to use or enjoy the street or to maintain its tracks thereon or to operate its cars thereover." Portland Ry., Light & Power Co. v. City of Portland, supra, 181 F. l. c. 634. Certainly the effect of the stated taking would be inconsistent with and in conflict with continued use of the land by the railroad; the taking would materially impair, injure, and interfere with such use; there is no provision for joint or shared use of the land for street and railroad purposes simultaneously, and Kansas City does not have the power, absent consent of all interested parties, either expressly or impliedly, to exercise its right of eminent domain to that extent.

Appellant states in its brief that it "does not seek to destroy the existing public use" and that it intends simply to adapt a "highway" to vehicular traffic instead of rail traffic, Kansas City Terminal Railway Co. v. Kansas City Transit, Inc., Mo., 359 S.W.2d 698, suggesting an existence together such as a railroad track in a city alley, Brown v. Chicago Great Western Ry., 137 Mo. 529, 38 S.W. 1099; but, admittedly, and as previously demonstrated, no such statement, intention, covenant, or reservation is contained in the ordinance seeking to condemn the railroad right of way. If appellant intended to provide for uses other than as described in the ordinance of taking, such uses should have been spelled out in the ordinance rather than to attempt to reserve them by testimony, agreements, and statements. Missouri Edison Co. v. Gamm, Mo.App., 379 S.W.2d 166, 170[8]; Shell Pipe Line Corp. v. Woolfolk, 331 Mo. 410, 53 S.W.2d 917, 918[3]; Union Electric Co. v. Levin, Mo.App., 304 S.W.2d 478, 481[2].

Appellant contends further, however, that its proceeding is not void for all purposes and that the rule against condemning a railroad right of way longitudinally should not be applied to this attempted taking by Kansas City because the respondent abutters, Aschman and Academy, et al., have no right to object to the taking in that "they have only a possibility of reverter," and the

only parties who could object, Ashleys, are estopped by entering into a contract to fix compensation for taking their interest.

■■ The general rule is stated in 29A C.J.S. Eminent Domain § 95, pages 389, 390: "The owner of property to be taken or affected by the exercise of the power of eminent domain may raise the objection that the condemning corporation or body is exceeding its powers, but such objection cannot be raised by a third person not interested in the property. * * * Citizens and taxpayers may file objections to the taking of property already devoted to a public use." See also Nichols, Eminent Domain, Section 46, page 446. Under the rule it is obvious that one who does not object cannot rely on objections made and abandoned by others, Kansas City v. Woerishoeffer, 249 Mo. 1, 155 S.W. 779, 783[2]; Kansas City v. Cain, Mo.App., 319 S.W.2d 266, 270[5, 6]; nor can one not otherwise entitled to object place himself in the shoes of one entitled to object who chooses not to do so, Everett W. Cox Co. v. State Highway Commission, 4 N.J.Misc. 510, 133 A. 419, 420; University City v. Chicago, R. I. & P. R. Co., 347 Mo. 814, 149 S.W.2d 321. Of course the owners of the property sought to be condemned can always object, and citizens and taxpayers have been recognized as proper parties to object where the property in question is already devoted to a public use. Carmack v. United States, 8 Cir., 135 F.2d 196, 199[1]; United States v. Carmack, supra; City of Moline v. Greene, supra, 96 N.E. 1. c. 913[3].

Appellant says that Aschmans and Academy, et al., the abutting owners, have "only a possibility of reverter" and that their interest is too remote for their objections to be heard. People of Puerto Rico v. United States, 1 Cir., 132 F.2d 220, 221–222[1–3]; Chandler v. Jamaica Pond Aqueduct Corp., 125 Mass. 544, 547; State ex rel. Sayers v. School Dist., 79 Mo.App. 103. Appellant also cites Laclede Gas Co. v. Abrahamson, Mo., 296 S.W.2d 100, 61 A.L. R.2d 1286, which is not in point because

"* * * plaintiff (did) not seek to condemn rights in any land owned by them. Intervenors do not even claim an easement in the lands described in the petition for condemnation." 296 S.W.2d 1. c. 102[3].

The status of Aschmans and Academy, et al., as the owners of property abutting the railroad right of way sought to be condemned by Kansas City was fixed in Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649, 136 A.L.R. 286, where it was contended that such owners had but a possibility of reverter. "The law is settled in this state that where a railroad acquires a right of way whether by condemnation, by voluntary grant or by a conveyance in fee upon a valuable consideration the railroad takes but a mere easement over the land and not the fee", 152 S.W.2d 1. c. 652[1–3]; and since an easement only is received by a railroad company "the land goes back to the original owner, or his grantees, freed from the public use or easement" in the event the easement is abandoned for railroad purposes, 152 S.W.2d 1. c. 654–655[14]. "It is a primary rule that in the grant of an easement no title passes but the title rests and continues in the holder of the servient estate so that when the estate ceases there can be no such thing as a reversion of title. In such an event the servient estate is merely freed from the burden of the use and any reversion is merely that of the use.

"We find that the term 'revert' in its technical sense was inappropriately employed as far back as Kellogg v. Malin, 50 Mo. 496, 11 Am.Rep. 426 which seems to have been the source of the inaccuracy in this State. * * *

"The court clearly intended by the employment of such term that the *use* of the land, upon abandonment of the easement, was turned back to the owner of the soil freed from the exclusive possession of the railroad. * * * It is clear * * * the use of the word 'revert' was not in relation to title, nor by so using it intended to imply that anything more than an easement was involved." 152 S.W.2d 1. c. 655[16]. See

also State ex rel. Highway Comm. v. Jacob, Mo., 260 S.W.2d 22, 24[1]; Bray v. St. Louis-San Francisco Ry. Co., Mo., 310 S. W.2d 822, 824; Hennick v. Kansas City Southern Ry. Co., 364 Mo. 883, 269 S.W.2d 646, 648[1]; and if a railroad easement is to be disposed of it "could only (be) disposed of to another railroad corporation for those uses, and those alone, for which the original grant was made. The attempt to divert the subject of the grant to other purposes would result in reversion to the last owner of the premises", Chouteau v. Missouri Pac. Ry. Co., 122 Mo. 375, 22 S.W. 458, 460, 461.

Several cases have recognized the right to object to a diversion of, or an additional burdening of the public use easement to exist in persons in the circumstances of the abutters here. The situation was aptly described in St. Louis, I. M. & S. Ry. Co. v. Cape Girardeau Bell Tel. Co., 134 Mo.App. 406, 114 S.W. 586, 588: "There is still another class of cases in some respects resembling the one now under consideration. In this class the railroad right of way consists of an easement only, as here, the fee thereto residing in the adjacent landowner, and the telegraph is constructed thereon under a contract with the railroad company for the purpose of serving the railroad in its operations; but for the purpose, as well, on the part of the telegraph company, to serve the general public as a commercial enterprise. Under such circumstances, where the adjacent owner of the fee has asserted a right, it is declared that, in so far as the telegraph company serves the purpose of the railroad, its occupancy of the right of way easement is not an additional servitude or burden upon the fee of which he may complain. The right of the adjacent fee owner is precluded on the theory that such use is a legitimate development for railroad purposes essentially contemplated in the grant of the easement and for which he received compensation at the time. Nevertheless, in so far as the telegraph or telephone company thus rightfully occupying the right of way serves the general

public as a commercial enterprise, distinct from the avocation of the railroad, it constitutes a use of the right of way easement other than for railroad purposes, and it is therefore a servitude not contemplated in the original grant and a burden upon the fee of which the adjacent owner may rightfully complain." The foregoing quotation was relied upon in Eureka Real Est. & Inv. Co. v. Southern Real Est. & Financial Co., 355 Mo. 1199, 200 S.W.2d 328, 332 [8], in preventing a similar additional servitude and interest in land not contemplated in the grant of the easement. See also Muncie Electric Light Co. v. Joliff, 59 Ind.App. 349, 109 N.E. 433; State ex rel. Northern Pac. Ry. Co. v. Superior Court, 136 Wash. 87, 238 P. 985, 986–987[1,2]. In Board Regents Normal School Dist. No. 3 v. Painter, 102 Mo. 464, 14 S.W. 938, 10 L.R.A. 493, defendant's predecessor in title conveyed land to the inhabitants of Cape Girardeau for establishment of a public school and defendant was permitted to defend (successfully) against the attempt of plaintiff under deed from the city to divert the use of the property for the very similar use as a normal school. Similarly, in Carmack v. United States, supra, and United States v. Carmack, supra, the federal government sought to condemn land donated to Cape Girardeau "for the convenience and encouragement of the inhabitants * * * and owners of lots in and near the same," and a direct heir of the original owner-donor, who was also a lot owner and taxpayer, was held entitled to object to a taking of the land for a purpose destructive of the use for which it was dedicated. And abutting owners may insist "that their land continue to be used for legitimate railroad right-of-way purposes." Hennick v. Kansas City Southern Ry. Co., supra, 269 S.W.2d 1. c. 652[15, 16]. Under these authorities Aschmans and Academy, et al., abutting property owners, have the necessary interest to entitle them to object to the railroad easement being taken for purposes which, from the description of use in the ordinance of taking, would be destructive of and inconsistent with the pur-

pose originally contemplated by the grant of the railroad easement. To hold otherwise and deny them the right to object and be heard in these circumstances would be illogical.

Appellant suggests that University City v. Chicago, R. I. & P. R. Co., supra, stands for the proposition that abutting owners have no right to complain of this condemnation. In that case University City sought to condemn a railroad right of way for street purposes and the railroad, the abutting owners, and the heirs of the grantor of the easement were joined as defendants. However, in contrast to Kansas City's attempted taking, the abutters either failed to object or waived their objections by accepting an award of damages, and the railroad consented to the taking and agreed to accept a certain sum as damages. Only the heirs made any objection and, since the fee interest in a railroad easement is in successive abutting owners as previously demonstrated, rather than in heirs of the original grantor, they properly were held to have no standing in which to object. The questions presented by Kansas City's attempted taking were never reached. 149 S.W.2d l. c. 323[1]. So it is that the case also recognizes the standing of abutting owners to object to a longitudinal condemnation of a railroad easement but they chose there not to exercise the right.

Since the abutters have the necessary standing to object successfully to this attempted condemnation, it is unnecessary to discuss whether Ashleys are estopped to object and whether Aschmans have any additional rights by virtue of their alleged way of necessity across the railroad easement. It is also unnecessary to go into matters of abandonment or those related to the authority of the Interstate Commerce Commission and the Missouri Public Service Commission.

The judgment of dismissal is affirmed.

HOUSER, C., concurs.

WELBORN, C., not sitting.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HOLMAN, P. J., HYDE, J., and WOLFE, Special Judge, concur.

HENLEY, J., not sitting.